[Civ. No. 28013.   Second Dist., Div. Four.   Oct. 14, 1964.]

DAVID GLICKMAN et al., Plaintiffs and Appellants, v. JUDA GLASNER, Defendant and Respondent.

Joseph W. Fairfield, Ethelyn F. Black and Fairfield & Richman for Plaintiffs and Appellants.

Stanley Mosk and Thomas C. Lynch, Attorneys General, and A. Wallace Tashima, Deputy Attorney General, for Defendant and Respondent.

BURKE, P. J. — Plaintiffs sued certain defendants for damages for libel resulting from the publication and dissemination of an allegedly malicious and opprobrious document[1] over the signature of defendant Rabbi Juda Glasner.

---

[1] "DEPARTMENT OF PUBLIC HEALTH
217 West First Street
Los Angeles 12, California

"April 8, 1963

"Dear Sir:

"I have been advised that the Orthodox Rabbinate of this City has disqualified the following schochtim:

"Sidney Abramovitz
David Glickman
Benjamin Leventoff
Nathan Shapiro

"The edict of the rabbis reads as follows:

" 'You have transgressed against the teachings of the sages and you have defied the words of the Rabbis, of the heads of our land and of the Rabbis of our city. You have mislead [sic] our brethren, consumers of kosher meat and kosher poultry, and fed them non-kosher things that are against the laws of the Shulhan Aruk, and against the established rules. You have resisted with arrogance our admonitions. You did not pay attention to the visit of the six Rabbis of our city who came to your slaughterhouse to ask and to admonish you. And you still maintain your defying position, to slaughter poultry dressed in heated water immediately after slaughtering; therefore, in authority of our holy law, and of our sages of all generations and epochs, we ban your slaughtering as to being non-kosher like trefah and nevelah.

" 'And we are signing this day, Friday, of the weekly scriptual [sic] reading Vayikro in the year of 5,723 in the name of Misrad Harabonim Agudath Admorim Rabbinical Council:

" 'Rabbi Osher Zilberstein
Rabbi Herman Kahn
Rabbi Juda Isaacsohn
Rabbi S. H. Katz
Rabbi E. F. Rottenberg
Rabbi Aaron Twersky
Rabbi Jacob Levin'

"We have been supplied with a copy of the original Hebrew edict.

"On March 30, 1963 the following telegram was sent by Misrad Harabonim, Agudath Admorim and the Rabbinical Council of Southern California:

" 'This is to inform you that the following schochtim Sidney Abramowitz David Glickman Benjamin Leventoff and Nathan Shapiro have been totally disqualified by the United Orthodox Rabbinate of Greater Los Angeles comprised of the Misrad Harabonim Agudath Admorim

Rabbi Juda Glasner is the Kosher Food Law Representative in the Department of Public Health of the State of California and as such moved the court for an order dismissing the complaint as to him and for a summary judgment in his favor. Certain other defendants filed answers to the complaint and the matter is at issue as to them. They are not involved in this appeal. Rabbi Glasner's motion for summary judgment was granted and judgment was entered from which plaintiffs appeal.

Plaintiffs are "schochtim" or slaughterers of poultry according to Orthodox Hebrew ritual and authorized by Orthodox Rabbinical law. They contend that defendants, including Rabbi Glasner, entered into a conspiracy to defame them; that the libelous publication, on the letterhead of the Department of Public Health of the State of California, was willful, malicious, wanton, reckless and opprobrious; that publication being false and defamatory each plaintiff was injured and damaged in his reputation and profession.

The letter states that the Orthodox Rabbinate of Los Angeles has disqualified four schochtim, including the plaintiffs. The disqualifying edict and the names of plaintiffs are quoted in the letter. It also quotes a telegram sent by named defendants and the Rabbinical Council of Southern California that the same four schochtim have been "totally disqualified by the United Orthodox Rabbinate of Greater Los Angeles," and that the poultry slaughtered by these schochtim is nonkosher. The letter concludes with the following statement:

"Poultry slaughtered by a schochet who has been disqualified to act as such is nonkosher under Orthodox Hebrew law and the sale of poultry slaughtered by a disqualified schochet may result in the prosecution of the seller under Penal Code Section 383B."

The letter was mailed to a list of approximately 95 addressees, including all kosher retail markets in Los Angeles

---

and Rabbinical Council Stop as a result of which poultry slaughtered by one of these schochtim is rendered non-kosher trefah nevelah.'

"Poultry slaughtered by a schochet who has been disqualified to act as such is non-kosher under Orthodox Hebrew law and the sale of poultry slaughtered by a disqualified schochet may result in the prosecution of the seller under Penal Code Section 383B.

"Very truly yours,

"/s/ Juda Glasner

"RABBI JUDA GLASNER
"Kosher Food Law Representative"

County, three wholesale poultry markets and certain catering establishments dealing in kosher foods.

The opposing declaration of defendant Rabbi Glasner in support of his motion for summary judgment states that as Kosher Food Law Representative, he is the statewide enforcement officer of the State Kosher Food Law, section 383b of the Penal Code; that his duties include the performance of the "typical tasks" set forth in the State Personnel Board specifications for the class of Kosher Food Law Representative, Code No. 9034, a copy of which is footnoted below.[2] Included in such tasks was the duty to advise "interested persons such as kosher meat and poultry packers, wholesalers,

[2]    "CALIFORNIA STATE PERSONNEL BOARD
"specification for the class of
"KOSHER FOOD LAW REPRESENTATIVE
"Definition:
"Under direction of the Chief, Bureau of Food and Drug Inspections, Department of Public Health, to carry out the statewide program of investigation and inspection in connection with the enforcement of the State Kosher Food Law; and to do other work as required.
"Typical Tasks:
"As assigned, in the major metropolitan areas of the State, initiates and carries out a field inspection program designed to secure understanding of and compliance with the State Kosher Food Law; visits and inspects meat and poultry markets offering kosher products for sale to assure that such products have been properly identified, labeled, segregated, advertised, and otherwise handled in a manner consistent with orthodox Hebrew religious ritual and custom; inspects establishments such as delicatessens, restaurants, catering firms, and rest homes purveying kosher foods to see that products sold as kosher are, in fact, kosher and that they have been processed and served in a manner and with dishes, utensils, and vessels prescribed by Hebrew law and customs; makes field surveys to determine that kosher foods are properly prepared, stored, processed, labeled and advertised; meets with and advises interested persons such as kosher meat and poultry packers, wholesalers, retailers, and restaurateurs on application of the State Kosher Food Law and on proper practices to follow to insure compliance with this law; confers with violators of the Kosher Food Law in an effort to secure voluntary compliance with its provisions; conducts field investigations of complaints regarding kosher foods alleged to have been prepared, packaged, sold, or advertised in violation of the State Kosher Food Law; conducts investigations, gathers, assembles, and reports facts and evidence; assists in the preparation of cases for prosecution when necessary; works cooperatively with representatives of other governmental agencies including the State and Federal Departments of Agriculture and local law enforcement officials; prepares reports of field activities.
"Minimum Qualifications:
    "Ordained orthodox rabbi, in good standing with a recognized California or national rabbinical body and accredited to function in all spheres of the rabbinate.
                                    and
"Education:    Completion of theological studies for ordination as a rabbi at a recognized Jewish theological school."

retailers, and restaurateurs on application of the State Kosher Food Law and on proper practices to follow to insure compliance with this Law; confers with violators of the Kosher Food Law in an effort to secure voluntary compliance with its provisions; . . . conducts investigations, gathers, assembles, and reports facts and evidence. . . .''

The declaration further states the purposes for mailing the letter to be (a) that the addressees were ''interested parties'' in the enforcement and administration of the State Kosher Food Law; (b) that the mailing was an ''appropriate measure of preventative law enforcement''; (c) to secure voluntary compliance with the Kosher Food Law; and (d) to lay the foundation for criminal prosecution if later deemed necessary.

An opposing declaration by plaintiff Sidney Abramovitz attacks the qualifications of Rabbi Juda Glasner to be an orthodox rabbi; his competency to testify regarding Hebrew orthodoxy; and alleges all the plaintiffs performed as schochtim in accordance with orthodox requirements. The declaration further alleges an attempted heretic hierarchy of control by defendants of kosher supervision creating its own rules regarding kosher, using Rabbi Glasner as an instrument; that all defendants agreed on the contents of the libelous letter; that the letter was a despotic means to unlawfully control kashruth regulations to coerce the Jewish community to accept the dictates of the allegedly unlawful hierarchy as to what is kosher by threatening them with economic reprisals in the event they do not comply with such rules and regulations; that defendants are spurious rabbis and have ulterior, monetary motives; and that the letter was not within the official duties of the Kosher Food Law Representative. The affidavit recites in part: ''Conceding for a moment that two factions may exist in the State of California as to what is kosher and what is not kosher, it definitely is not within the duties of Juda Glasner to take sides or become partisan as to which one is correct and which one is not correct.'' A second, opposing declaration by Rabbi Orlanski states in substance that declarant is an ''ordained Rabbi'' and that plaintiffs have performed their duties as schochtim in accordance with orthodox requirements.

The questions presented on appeal are whether the acts of defendant Rabbi Juda Glasner were of a discretionary character within the scope of his employment to entitle him to immunity from tort liability as a governmental employee and whether the trial court erred in granting the summary

judgment. The plaintiffs contend no such immunity applies and that the complaint sets forth the existence of triable facts which preclude a summary judgment.

The applicable rule is set forth in *Lipman* v. *Brisbane Elementary School Dist.*, 55 Cal.2d 224, 229 [11 Cal. Rptr. 97, 359 P.2d 465], as follows: ''While, as pointed out in the *Muskopf* case [*Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211 (11 Cal.Rptr. 89, 359 P.2d 457)], a governmental agent is personally liable for torts which he commits when acting in a ministerial capacity, a different situation exists with respect to discretionary conduct. Because of important policy considerations, the rule has become established that government officials are not personally liable for their discretionary acts within the scope of their authority even though it is alleged that their conduct was malicious. (*Hardy* v. *Vial*, 48 Cal.2d 577, 582-584 [311 P.2d 494]; *Coverstone* v. *Davies*, 38 Cal.2d 315, 322 [239 P.2d 876]; *White* v. *Towers*, 37 Cal.2d 727, 730-732 [235 P.2d 209, 28 A.L.R.2d 636]; see *Barr* v. *Matteo*, 360 U.S. 564, 569 et seq. [79 S.Ct. 1335, 3 L.Ed.2d 1434].)''

This rule applies to ''incidental and collateral'' acts serving the principal purpose of the office (*White* v. *Towers*, 37 Cal.2d 727, 733 [235 P.2d 209, 28 A.L.R.2d 636]), and an allegation of conspiracy does not destroy the immunity (*Hardy* v. *Vial*, 48 Cal.2d 577, 583-584 [311 P.2d 494]). Further, the rule has recently been codified: ''Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.'' (Gov. Code, § 820.2.)

The distinction between discretionary and ministerial acts is stated in *Elder* v. *Anderson*, 205 Cal.App.2d 326, 331 [23 Cal.Rptr. 48], thusly: ''. . . [W]here the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial, but where the act to be done involves the exercise of discretion and judgment it is not to be deemed merely ministerial.''

The duties of the Kosher Food Law Representative were discretionary in nature. The trial judge, in her memorandum opinion, stated:

''(1) Defendant Glasner's qualification for his employment as Kosher Food Inspector cannot be attacked in this

proceeding. The determination of qualifications for public employment and the determinations of discipline and dismissal of such personnel rests in the hands of the State Civil Service and Personnel Boards, not in the courts at the instance of private litigants. (E.g., see Gov. Code, §§ 18700 et seq., 19570 et seq.; cf. *Cross* v. *Tustin* (1958) 165 Cal.App. 2d 146 [331 P.2d 785].)

"(2) Defendant Glasner is completely immune from liability if his publication of Exhibit 1 were within the scope of his discretionary duties, regardless of his personal motivations, good or ill. (*Lipman* v. *Brisbane Elementary School Dist.* (1961) 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465]; *Hardy* v. *Vial* (1957) 48 Cal.2d 577 [311 P.2d 494].)

"The duties of a Kosher Food Representative are stated by the State Personnel Board, set forth in defendants' affidavit, read with Penal Code section 383b and with Health and Safety Code section 214. Those duties specifically include advising interested persons 'such as kosher meat and poultry packers, wholesalers, retailers, and restaurateurs on application of the State Kosher Food Law. . . .' The Kosher Food Inspector also 'conducts investigations, gathers, assembles, and reports facts and evidence.' (Exhibits A to defendant Glasner's affidavit.)

"These duties obviously involve the exercise of discretion. In carrying out the obligations of his office, the inspector must decide what facts he shall gather, which investigations will be made, and what reports in his reasoned judgment should be made to bring about compliance with Penal Code section 383b. (Cf. *Lipman* v. *Brisbane Elementary School Dist.*, *supra*, 55 Cal.2d 233-235; *Martelli* v. *Pollock* (1958) 162 Cal. App.2d 655, 659 [328 P.2d 795]; *Jones* v. *Czapkay* (1960) 182 Cal.App.2d 192 [6 Cal.Rptr. 182].)

"The document upon which this case is founded purports to be a report by the Kosher Food Inspector to 'interested persons' setting forth the action taken by one rabbinical group and the defendants' interpretation of the relationship of that action to the requirements of section 383b of the Penal Code. Defendant Glasner's activity falls squarely within the letter of his discretionary duties. Thus the cloak of immunity is drawn closed over his action, even if we were to assume that defendant Glasner was actuated solely by malice toward these plaintiffs and that the document is libel *per se*. (*Hardy* v. *Vial*, 48 Cal.2d 577 [311 P.2d 494] and *Lipman* v. *Brisbane Elementary School Dist.*, 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465].)

"The principle established by these cases may work hardship from time to time, but were the rule otherwise the greater mischief would result. It may be that the statute which the inspector must enforce (Penal Code section 383b) is not finely drawn (*Erlich* v. *Municipal Court* (1961) 55 Cal.2d 553 [11 Cal.Rptr. 758, 360 P.2d 334]). It may be that public policy would be better served by a different statute, a different set of duties for Kosher Food Inspector, or a different Rabbinate than the one quoted in Exhibit 1. Whatever may be the merits of these views, this is not the forum and this is not the case in which they can be mooted.

"Taking the statutes, the office, and the duties as we find them, it is plain that this defendant is not exposed to liability in this case. Accordingly, the Court grants defendant Glasner's Motion for Summary Judgment. There is no triable issue of fact."

We concur with the trial judge.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.

A petition for a rehearing was denied October 23, 1964, and appellants' petition for a hearing by the Supreme Court was denied December 9, 1964. Mosk, J., was of the opinion that the petition should be granted.