[S.F. No. 23471. Dec. 3, 1976.]

LYMAN H. SANBORN, Plaintiff and Appellant, v.
CHRONICLE PUBLISHING COMPANY,
Defendant and Respondent;
CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Appellants.

## Counsel

Milton L. McGhee for Plaintiff and Appellant.

Thomas M. O'Connor, City Attorney, and John Sullivan Kenny, Deputy City Attorney, for Defendants and Appellants.

Cooper, White & Cooper, Robert R. Callan and Mark Logan Tuft for Defendant and Respondent.

## Opinion

**RICHARDSON, J.**—In this case we are presented with questions involving the liability of defendants City and County of San Francisco (City) and its clerk, Martin Mongan (Mongan), for defamation arising from Mongan's statements to the news media explaining his release to plaintiff of funds which had been deposited with Mongan. Concluding as we do that at the time of his statements Mongan was acting within the

scope of his employment and that neither immunity nor privilege enfolded City or Mongan, plaintiff's judgment against both defendants following jury verdict is affirmed.

We affirm the judgment entered in favor of defendant Chronicle Publishing Company, and adopt that portion of the vacated Court of Appeal opinion which considered this aspect of these appeals.

The record reflects that in 1968 plaintiff Sanborn visited Mongan at the latter's office and sought the release of approximately $25,400 in attached funds which had been deposited with Mongan in his capacity as county clerk. Although Mongan had been instructed by a deputy city attorney not to release the funds without a court order, Mongan decided that plaintiff's claim on the funds was valid and paid the money to him.

A few days later the chief deputy county clerk learned of the payment and advised Mongan that he had erred in releasing the funds without a court order. (Mongan testified at trial that he realized he had made a mistake, that no fraud or trickery was involved, but that he had simply been persuaded by plaintiff to release the funds to him.) Soon thereafter, a reporter from the San Francisco Chronicle learned of the incident, called Mongan on the telephone and interviewed him regarding the matter. In an article in the Chronicle which followed, Mongan was quoted as having said that "It was a real con job," that plaintiff "outtalked me and convinced me that we were holding his money illegally," that plaintiff "ranted and raved and said I was putting his client to a lot of unnecessary expense and trouble." The story was thereafter published in the Sacramento Bee which has a large circulation in the area where plaintiff resided. As a result of the publication, plaintiff lost his job, suffered embarrassment and ridicule, and resigned from several clubs and organizations.

Plaintiff filed a defamation action against City, Mongan, and the Chronicle Publishing Company. The suit against the Chronicle was dismissed for failure to prosecute; plaintiff appealed this dismissal. The action against City and Mongan proceeded to trial and the jury returned a verdict for plaintiff against both defendants in the amount of $31,650. Plaintiff appeals from the judgment of dismissal as to the Chronicle. In a separate appeal, City and Mongan seek reversal of the judgment entered in plaintiff's favor. We consider each appeal separately.

### 1. *The Appeal of City and Mongan*

Defendants concede, for purposes of this appeal, that Mongan defamed plaintiff. They assert, however, that Mongan possessed either an absolute or qualified privilege (see Civ. Code, § 47, subds. 1, 3), or alternatively that both Mongan and City are immune from liability under the circumstances of this case (see Gov. Code, §§ 815.2, subd. (b), 820.2).

We first dispose of a preliminary issue, namely, the liability, if any, of City for the acts of Mongan, its employee.

■ a.) *Respondeat superior.* As a general proposition it may be said that, if an employee or agent while acting in the scope of his authority and in furtherance of the employer's business defames another, his employer or principal may be held liable therefor. (*Correia* v. *Santos* (1961) 191 Cal.App.2d 844, 855 [13 Cal.Rptr. 132].) This is so even though the agent may have exceeded his express authority (*Draper* v. *Hellman Com. T. & S. Bank* (1928) 203 Cal. 26, 38-39 [263 P. 240]), and it is true regardless of the agent's motive (*Rosenberg* v. *J. C. Penney Co.* (1939) 30 Cal.App.2d 609, 623 [86 P.2d 696]). It has been said that the rule is supported by "The great weight of authority." (See Annot. 150 A.L.R. 1338, 1344.)

The foregoing well-rooted principle is unaffected by the fact that the employment is public. Considerations bearing on the ambit and nature of that public employment were well expressed in *Neal* v. *Gatlin* (1973) 35 Cal.App.3d 871, 875 [111 Cal.Rptr. 117], ". . . a public employee is acting in the course and scope of the employment 'when he is engaged in work he was employed to perform or when the act is an incident to his duty and was performed for the benefit of his employer and not to serve his own purposes or conveniences.' [Citations.] The phrase 'scope of employment' has been equated with the express or implied power of the public employee to act in a particular instance, and in evaluating his conduct to determine whether it is within the ambit of his authority we are to look not to the nature of the act itself, but to the purpose or result intended. [Citations, fn. omitted.] If the object or end to be accomplished is within the employee's express or implied authority his act is deemed to be within the scope of his employment irrespective of its wrongful nature." (See also *Burgdorf* v. *Funder* (1966) 246 Cal.App.2d 443 [54 Cal.Rptr. 805].)

■ The record before us supports the jury's implied finding that Mongan was acting within the scope of his authority when he defamed the plaintiff. Mongan held the office of Clerk of the City and County of San Francisco and, as such, had at least implied authority to issue statements to the press and to submit to interviews regarding the operation of the clerk's office, including explanations as to why impounded funds were released without prior court order. The subject of the press interview involved public and official business. Any statements made by Mongan concerning transactions of the clerk's office, while conceivably exculpating Mongan personally to a degree, would also serve the further purpose of informing the press and the public as to whether the clerk's office was performing its public duties in a rational and orderly fashion. While City insists that the sole purpose of the statement in question was for the personal advantage and gain of Mongan, we cannot presume as a matter of law that the statements were of no conceivable benefit to the City, or that their object was *solely* to save Mongan from personal embarrassment. The jury reasonably could have concluded that responses to press inquiry constituted, as to time, place, and circumstance, responses of a public official regarding his administration of a public office and thus was within the scope of his public employment. An important public purpose is served both by the press inquiry and by the official's response. We conclude, accordingly, that the statement was made within the ambit of Mongan's public employment, and that his principal, City, is liable therefor in the absence of other defenses.

■ b.) *Absolute privilege.* Mongan and City both contend that Mongan's statements were protected by an absolute statutory privilege conferred on all publications made "[i]n the proper discharge of an official duty." (Civ. Code, § 47, subd. 1.) Plaintiff, however, correctly observes that the courts of this state have thus far extended the protections of this statute only to high-ranking state and federal officials, such as the President of the United States, the governor of any state or territory, cabinet officers of the United States and the corresponding officers of any state or territory. (See *Saroyan* v. *Burkett* (1962) 57 Cal.2d 706, 710 [21 Cal.Rptr. 557, 371 P.2d 293]; *Frisk* v. *Merrihew* (1974) 42 Cal.App.3d 319, 323 [116 Cal.Rptr. 781]; *White* v. *State of California* (1971) 17 Cal.App.3d 621, 627-628 [95 Cal.Rptr. 175]; see also Rest., Torts, § 591; Rest.2d Torts (Tent. Draft No. 20), § 591, com. (c); Prosser, The Law of Torts (4th ed. 1971) § 114, pp. 782-784; 1 Harper & James, The Law of Torts (1956) § 5.23, pp. 429-430; but see *Barr* v. *Matteo*

(1959) 360 U.S. 564, 572-576 [3 L.Ed.2d 1434, 1441-1444, 79 S.Ct. 1335] [absolute privilege for all *federal* executive officers].)

It has been noted by recognized authorities that the purpose of the so-called absolute "official duty" privilege is to insure efficiency in government by encouraging *policy-making* officials to exercise their best judgment in the performance of their duties free from fear of general tort liability. (Harper & James, *supra*, at p. 429.) As we discuss below in greater detail we have concluded that defendant Mongan was not exercising policy-making functions when he defamed plaintiff, and thus he is not protected by the absolute privilege contained in Civil Code section 47, subdivision 1.

c.) *Conditional or qualified privilege.* Defendants next assert that they are entitled to the protection of that privilege, if not absolute at least conditional or qualified, which is contained in subdivision 3 of section 47 of the Civil Code. This statute immunizes communications made ". . . *without malice,* to a person interested therein, [by one] . . . (3) who is requested by the person interested to give the information." (Italics added.) By definition, this conditional privilege is defeated by a showing of "malice."

Section 48a, subdivision 4(d), of the Civil Code defines "actual malice" as "that state of mind arising from hatred or ill will toward the plaintiff; provided, however, that such a state of mind occasioned by a good faith belief on the part of the defendant in the truth of the libelous publication or broadcast at the time it is published or broadcast shall not constitute actual malice." A California appellate court has recently held that "The malice necessary to defeat a qualified privilege is 'actual malice' which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights (citations)." (*Roemer* v. *Retail Credit Co.* (1975) 44 Cal.App.3d 926, 936 [119 Cal.Rptr. 82], italics in original; see also *White* v. *State of California, supra,* 17 Cal.App.3d 621, 628-629.) Defendants have not asserted the existence of any First Amendment issues which might have invoked a different standard for proving malice. (See *Roemer, supra,* at pp. 931-936.)

█ The record contains substantial evidence to support a finding either that Mongan bore plaintiff ill will, or that Mongan lacked a good faith belief in the truth of his statements. The jury could have found that Mongan blamed plaintiff for the loss of the deposited funds, and that Mongan wished to transfer the blame to plaintiff by characterizing plaintiff's efforts as a "con job," thereby exculpating himself in the eyes of the press and general public. Although the evidence was also susceptible of other inferences, we conclude that there was substantial evidence of malice. (See, e.g., *Cunningham* v. *Simpson* (1969) 1 Cal.3d 301, 308 [81 Cal.Rptr. 855, 461 P.2d 39], illustrating the type of evidence sufficient to establish malice.)

d.) *Statutory immunity*. Defendants Mongan and City next assert that Mongan's activities constituted "discretionary acts" for which immunity is granted under Government Code section 820.2. If Mongan is immune from liability to plaintiff under this section, it necessarily follows that City would likewise be immune. (Gov. Code, § 815.2, subd. (b).)

Section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or. not such discretion be abused." Several Court of Appeal cases have held, in varying factual contexts, that public employees who, while acting within the scope of their employment, defame third persons are engaged in discretionary activity thereby invoking immunity under section 820.2. (See *Miller* v. *Hoagland* (1966) 247 Cal.App.2d 57, 62 [55 Cal.Rptr. 311]; *Burgdorf* v. *Funder, supra,* 246 Cal.App.2d 443, 448-449; *Glickman* v. *Glasner* (1964) 230 Cal.App.2d 120, 125-126 [40 Cal.Rptr. 719].) In *Miller* and *Burgdorf,* for example, a city attorney and a tax officer, respectively, wrote allegedly libelous letters in the course of discharging their official functions. The courts in those cases held that section 820.2 immunity was available since these officers were "exercising their discretion" in the matters at issue. Defendants urge that Mongan was likewise engaged in discretionary activity when he discussed the plaintiff's matter with the press.

The foregoing cases, however, preceded our decision in *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352]. The broad rule of discretionary immunity suggested by the courts in such cases as *Miller* and *Burgdorf* must be reexamined in the light of the principles therein enunciated by us. █. In *Johnson,* we construed

section 820.2 as conferring immunity with respect to "basic policy decisions," or activity which may be characterized as the "planning" rather than the "operational" level of decision making. (69 Cal.2d at pp. 793-794; see *Ramos* v. *County of Madera* (1971) 4 Cal.3d 685, 693 [94 Cal.Rptr. 421, 484 P.2d 93]; *County of Sacramento* v. *Superior Court* (1972) 8 Cal.3d 479, 489-491 [105 Cal.Rptr. 374, 503 P.2d 1382] [dis. opn. by Tobriner, J.].) We pointed out in *Johnson* that "Immunity for 'discretionary' activities serves no purpose except to assure that courts refuse to pass judgment of policy decisions in the province of coordinate branches of government. Accordingly, to be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision. [Citations]" (69 Cal.2d at pp. 794-795, fn. 8.)

A leading commentator in the field, has interpreted *Johnson* as rejecting a mere "semantic inquiry" into the literal meaning of the word "discretionary" in section 820.2, and impliedly disapproving two of the libel cases relied upon by defendants herein, *Burgdorf* v. *Funder, supra,* 246 Cal.App.2d 443, and *Glickman* v. *Glasner, supra,* 230 Cal.App.2d 120. (Van Alstyne, Cal. Government Tort Liability (Cont.Ed.Bar Supp. 1969) § 5.51 at pp. 12-13.)

Was defendant Mongan's telephonic interview with the press a type of "discretionary" act contemplated by section 820.2? We conclude that it was not. Although defendants' contention is arguable that Mongan may have had discretion to discuss the Sanborn matter with the press, we cannot conclude that the decision to do so was in the nature of a "basic policy decision" made at the "planning" stage of City's operations. A governmental officer's discussions with the public or press regarding the functioning of his office would seem, instead, to fall within the category of those routine, ministerial duties incident to the normal operations of that office.

Moreover, Mongan testified at trial that Mr. Cooper, the county controller, had advised Mongan to discuss the Sanborn affair with the press. If, for purposes of argument, the decision to permit a press interview was a "basic policy decision" under *Johnson,* the jury reasonably could have found that such a decision was made by Cooper, not Mongan, and accordingly the decision having been made by another,

Mongan's subsequent defamatory statements were not protected by the discretionary act immunity of section 820.2.

We conclude that the judgment against defendants City and Mongan should be affirmed.

## 2. *Appeal of Plaintiff*

As indicated above, a hearing was granted by us in this case after a decision by the Court of Appeal, Third Appellate District, for the purpose of giving further study to the problems herein presented. After such study, we have concluded that the portion of Justice Regan's well-reasoned opinion for the Court of Appeal disposing of plaintiff's appeal from the judgment dismissing his action against defendant Chronicle correctly treats the issues and we adopt it as part of the opinion of this court. That opinion, with appropriate deletions and additions,\* is as follows:

Plaintiff contends that the trial court abused its discretion in dismissing the action against [defendant] Chronicle for failure to prosecute under Code of Civil Procedure section 583, subdivision (a), relying on *Weeks* v. *Roberts* (1968) 68 Cal.2d 802 [69 Cal.Rptr. 305, 442 P.2d 361].

Section 583 of the Code of Civil Procedure provides, in pertinent part: "(a) The court, in its discretion, may dismiss an action for want of prosecution pursuant to this subdivision if it is not brought to trial within two years after it was filed. The procedure for obtaining such dismissal shall be in accordance with rules adopted by the Judicial Council.

"(b) Any action heretofore or hereafter commenced shall be dismissed . . . on motion of the defendant, after due notice to plaintiff or by the court upon its own motion, unless such action is brought to trial within five years after the plaintiff has filed his action, except where the parties have filed a stipulation in writing that the time may be extended."

■ Subdivision (a) places no restrictions on the exercise of the trial court's discretion and it will be disturbed only in cases of manifest abuse.

---

\*Brackets together, in this manner[], are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than the editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court. (*Estate of McDill* (1975) 14 Cal.3d 831, 834 [122 Cal.Rptr. 754, 537 P.2d 874].)

(*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 563-564 [86 Cal.Rptr. 65, 468 P.2d 193].)

The record in this case reveals no abuse of discretion. The complaint was filed on February 19, 1969. Over the next several months the Chronicle was given several extensions of time to plead by plaintiff's attorney, the last one being an open extension of time to plead subject to written notice. During this time plaintiff's attorney advised that he wanted a "nuisance" settlement from the Chronicle and made demand of $500. Plaintiff subsequently substituted attorneys and an amended complaint was filed February 6, 1970. Chronicle was not served with the amended complaint until early June 1970. On July 6, 1970, the Chronicle filed a demurrer to the complaint. The demurrer was overruled on August 7, 1970. On October 18, 1971, plaintiff served Chronicle with an at-issue memorandum. On October 22, 1971, Chronicle filed a memorandum that the case was not at issue as to it on the ground that to date plaintiff had not given notice of the court's ruling on Chronicle's demurrer as provided by Code of Civil Procedure, section 472b and California Rules of Court, rule 204.

A pretrial conference was set for November 22, 1972. Chronicle filed a pretrial statement submitting that the case was not at issue as to it since to date it had not been given notice of the court's ruling on the demurrer and had therefore not been required to answer the complaint. On November 22, prior to the conference, Chronicle filed its notice of motion for judgment on the pleadings. At the pretrial conference, at which plaintiff was present, a settlement agreement was reached between Chronicle and plaintiff's then attorney. Thereafter the pretrial conference was continued to December 19, 1972, and Chronicle took its motion for judgment on the pleadings off calendar in reliance on the proposed settlement. Chronicle did not attend the conference on December 19, at which time the court determined that the matter was at issue as to the remaining parties and the case was set for trial for March 12, 1973.

On January 24, 1973, plaintiff again substituted counsel, and under new counsel noticed a motion on February 5, 1973, to vacate or modify the existing pretrial conference order "to clear up the status of THE CHRONICLE PUBLISHING COMPANY as an active defendant in the litigation" and served Chronicle with interrogatories. On February 23, 1973, plaintiff finally notified Chronicle of the overruling of their

demurrer on August 7, 1970. Chronicle answered the complaint on March 13, 1973.

Plaintiff filed an at-issue memorandum on March 14, 1973. On April 25, 1973, he filed his first notice of motion to advance the cause for trial within the five-year bar of Code of Civil Procedure section 583. [On] May 7, 1973, Chronicle filed a notice of motion for summary judgment on the ground that the action had been settled, and a motion for judgment on the pleadings. The motion for summary judgment was denied on June 27, 1973, and the motion for judgment on the pleadings was granted on August 13, 1973, unless plaintiff amended the complaint to state a cause of action. Plaintiff filed a second amended complaint on August 22, 1973. Chronicle's demurrer to the second amended complaint was overruled on October 17, 1973.

Plaintiff filed his memorandum that civil case was once again at issue on October 29, 1973, and noticed a motion to advance cause for trial on October 30, 1973. Chronicle answered the second amended complaint on November 7, 1973. Thereafter on November 15, 1973, the trial court denied plaintiff's motion to advance because the at-issue memorandum had not been properly filed, and ordered the at-issue memorandum stricken on November 16, 1973.

Plaintiff filed a third at-issue memorandum on December 3, 1973, and noticed a motion to advance cause for trial on December 11, 1973. On December 31, 1973, the trial court denied the motion to advance as to Chronicle and on its own motion dismissed the action against Chronicle pursuant to Code of Civil Procedure section 583, subdivision (a).

Plaintiff's only arguments in the appellate briefs, as well as in argument to the trial court, in support of his motion to advance are that he was ready to proceed to trial and under *Weeks, supra,* the court should have given him a trial date. He makes no showing of excuse for the delay, but merely supports an assertion of due diligence by listing a chronology of the various papers in the court's file. The record in the lower court does not reflect what showing of excuse was made orally at the hearing on the motion to advance. The record reflects that the trial court had good cause to dismiss on its own motion. The plaintiff has failed to meet his burden of showing excusable delay.

Plaintiff's reliance on *Weeks, supra,* is misplaced; that case is detrimental rather than helpful to his argument. *Weeks* held that: "[A] trial court should not confuse and discredit the law by refusing to set a cause within the five-year period because it believes that a discretionary dismissal is warranted. . . . If a court feels impelled to dismiss an action less than five years after its filing for want of prosecution, it should do so and accept review on that basis. It should not exercise its discretion to dismiss on the basis of inconvenience to the court and in the guise of a refusal to specially set. . . . Fault and delay may be ground for dismissal; but court congestion is no reason to preempt one's day in court when there is a reasonable time to provide it." (68 Cal.2d at pp. 806-807.)

It is clear in this case that the trial court followed the dictates of *Weeks* and accepted review on the basis of a discretionary dismissal for want of prosecution under Code of Civil Procedure section 583, subdivision (a), rather than simply refusing to set the cause for trial. The court's order read: "As to defendant Chronicle Publishing Company, again in conformity with the suggestion at the top of Page 808 of the *Weeks* Opinion, I dismiss the Complaint on my own motion, exercising my discretion under C.C.P. § 583a. Consideration has been given to all the factors mentioned in Court Rule 203.5, with the result that I find the delay in bringing this case to trial as against this defendant to be inexcusable. Justice can be truly served between plaintiff and said defendant only by such dismissal, and I am prepared to accept review on the basis thereof." []

The judgments are affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.