Filed 4/12/22  Mitchell v. Moses CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DANIEL MITCHELL et al., | |
| Plaintiffs and Appellants, | G060393 |
| v. | (Super. Ct. No. 19CV001523) |
| JOSEPH MOSES et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Monterey County, Susan J. Matcham, Judge.  Reversed and remanded.

Patane • Gumberg • Avila, Andrea C. Avila, Nina M. Patane and Jennifer C. Owens; Horvitz & Levy, Jeremy B. Rosen and Rebecca G. Powell for Plaintiffs and Appellants.

Fenton & Keller, Elizabeth R. Leitzinger and Samuel B. Beiderwell for Defendants and Respondents.

# INTRODUCTION

Scott Davis, Daniel Mitchell, Christian Schneider, and Schneider's company Pivotal Campaign Services, LLC, appeal from an order granting an anti-SLAPP motion to strike appellants' defamation suit, a motion made by respondents Joseph Moses, Archie Warren, and Mark Caldwell. In essence, the trial court granted the motion because appellants Davis and Mitchell had failed to present sufficient evidence of malice and the suit of the other two appellants was barred by the interested-person privilege of Civil Code section 47, subdivision (c).

The analysis on appeal is complicated by the appellants' differing status for defamation purposes. Davis and Mitchell are public figures. They must therefore present clear and convincing evidence of actual malice. Schneider and Pivotal Campaign Services, however, are private figures. They have a significantly lesser burden of proof when it comes to malice.

We conclude Davis and Mitchell carried this burden, which is not to prove their allegations but to present a prima facie case. The evidence they presented, if credited, establishes a prima facie case that respondents acted, at the very least, with reckless indifference as to the truth or falsity of the allegedly defamatory statements.

As to Schneider and his company, the trial court found they were private figures. While agreeing defendants had acted without reasonable care in determining the truth or falsity of the statements referring to these plaintiffs, the court found Schneider had not presented evidence of statutory malice, which our Supreme Court has defined in part as a lack of reasonable grounds for belief in the truth of the publication and therefore a reckless disregard of the plaintiff's rights. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 721 (*Taus*).) The court granted the anti-SLAPP motion as to these plaintiffs as well, on the ground that the interested-person privilege of Civil Code section 47, subdivision (c), applied, because the respondents were interested persons communicating to other interested persons.

2

But the interested-person privilege applies only if the communication is made "without malice."  (Civ. Code, § 47, subd. (c).)  The evidence presented in appellants' opposition to the anti-SLAPP motion was sufficient to establish a prima facie case of statutory malice of the lack-of-reasonable-grounds type, so the motion should have been denied as to these appellants as well.

Accordingly, we reverse the order granting the anti-SLAPP motion on malice grounds.  We return the entire matter to the trial court to rule on respondents' contention the second and fourth causes of action are time-barred – upon which the trial court declined to rule – and on another privilege raised in respondents' motion, fair comment, which the trial court also did not reach.

**FACTS**

Davis is a deputy sheriff with the Monterey County Sheriff's Department.  He is also a member of the Salinas City Council.  Mitchell is a Monterey County Sheriff and the president of the Deputy Sheriffs Association of Monterey County (DSA).  Schneider owns Pivotal Campaign Services, a company that provided consulting services to the DSA between December 2015 and September 2018.

Davis ran for the office of Monterey County Sheriff in the November 2018 election.  His opponent was the incumbent, Steve Bernal.  Davis announced his candidacy for the post in early September 2017.  He retained Schneider's company for political consulting services, which were paid for from his campaign checking account.

The DSA has a political action committee (PAC) that supports candidates and issues of interest to the deputy sheriffs.  The members make contributions to the PAC for this purpose.  The finances of the association and the PAC are kept separate.

After Davis announced his candidacy for sheriff, the DSA membership voted to endorse him rather than Bernal.  As association president, Mitchell polled the members, and 70 percent of those who responded voted to support Davis.

3

In 2017, respondents Moses, Caldwell, and Warren were members of "C-unit," a subgroup of DSA comprised of higher-ranking officers – captains and commanders. Moses met with Mitchell in November 2017 and asked him to change the association's endorsement of Davis to one for Bernal. Mitchell refused and reported that Moses was "not happy with [his] decision." Other C-unit members also expressed displeasure with the Davis endorsement to Mitchell.

In January 2018, Moses was elected to the association's board to represent C-unit. In early February 2018, he asked the DSA's accounting firm for the association's financial records. They sent him the association's balance sheets as of December 31, 2016 and 2017, and as of January 31, 2018; profit and loss statements for 2016, 2017, and January 2018; and the general ledger for 2017. These documents were reviewed at the February board meeting, with Mitchell in attendance, and Moses asked no questions about the information in the records.

In "late March or early April" 2018, Moses and another person went to the accountants' office for additional financial records. They obtained 2017 bank statements, deposits, paid bills, and copies of checks made out to Pivotal Campaign Services.[1]

An anonymous email of over six printed pages dated March 22, 2018, was sent to Monterey County deputies through the association email address. The email covered a range of topics dealing with the association's finances and the contention that the current president, Mitchell, was overspending without authorization. The email compared expenses for 2017 and the previous year's spending for several categories of expenses, in each case noting that the later year's expense for that category was much higher than the previous year's.[2]

---

[1]  The email to Mitchell regarding the documents Moses obtained refers to "some *check* made out to Pivotal Campaign Services." (Italics added.) In light of the March 22 email, it seems reasonable to conclude this odd construction actually means more than one check was copied.

[2]  The comparisons are in each case to the penny, indicating the possession of detailed financial documents.

4

As it pertains to the present appeal, the email referred to Schneider and Pivotal Campaign Services as Davis' campaign manager and listed eight checks with dates between May 2017 and January 2018 paid by DSA to either Schneider or his company totaling just over $28,000. The author(s) scoffed at Mitchell's explanation that Schneider had been hired for data services, development, and long-term planning and called the relationship "political paybacks." The author(s) also criticized Mitchell for having lunch with Schneider on three occasions in March and May 2017, on the DSA expense account.

On April 11, 2018, DSA members voted to remove C-unit from membership. On April 17, 2018, Moses held a press conference on the sidewalk in front of the DSA offices in Salinas. The statements he made in the press conference were subsequently broadcast on the local television station's news program. The station reported that "ousted members of the [DSA] are accusing [Davis] of using thousands of union dollars to pay his campaign manager." The story included a quotation from Moses regarding "fraud, embezzlement and campaign money laundry [*sic*] . . . by   . . . Mitchell and . . . Davis."

On April 25, Warren and Caldwell held a joint press conference for reporters in Salinas. Caldwell stated he had copies of DSA checks showing inappropriate payments to Schneider as Davis' campaign manager. Warren also represented he had seen the checks.

Appellants filed their complaint on April 12, 2019. The following allegedly defamatory statements are attributed to Moses:

• "Potential fiscal mismanagement, fraud, embezzlement and campaign money laundering by the DSA of the DSA funds by President . . . Mitchell and the former President, . . . Davis."

• "Through this [review of the [DSA] financial statements] we were able to find $31,000 that has been contributed to either . . . Schneider or Pivotal Campaign

5

Services which is owned by . . . Schneider.  Those checks were being signed by . . . Davis and . . . Mitchell."

• "What we uncovered in our limited investigation shows over $31,000 of membership dues (were) laundered into . . .  Davis' campaign fund to pay his campaign manager, . . . Schneider of Pivotal Campaign Services."

• "In addition, there are several questionable donations and reimbursements made on behalf of . . .  Davis out of the [DSA] coffers."

• "We [C-unit] have no ability to question the DSA Board on the financial improprieties we have uncovered."

The following allegedly defamatory statements are attributed to Caldwell:

• "My colleagues and I believe that the DSA President . . . Mitchell and . . . Davis inappropriately paid money . . . from the DSA to . . .  Davis' campaign for sheriff."

• "We believe [copies of checks] substantiate our claim that DSA funds were inappropriately diverted to the . . .  Davis for Sheriff campaign."

The following statements from the March 22 email, allegedly sent by the defendants, are alleged to be libelous per se:

• Mitchell made an under the table payoff for Davis' campaign for sheriff by paying Schneider, $28,250 of DSA money without authorization.

• Schneider is Davis' campaign manager acting under false pretenses.

• Mitchell should be investigated for criminal acts.

• Mitchell deceived the DSA board about the true purpose of Schneider's services.

The following statements from the March 22 email are alleged to be libelous per quod.

• "The DSA President [MITCHELL] and the Board (Directors at that time) paid Scott Davis' campaign manager Christian Schneider and his company Pivotal

6

Campaign Services $28,250.00 of DSA dues without notifying or a consent/vote of the members."

• "The DSA President [Mitchell] has stated they paid Christian Schneider for long term planning which does not seem to be a plausible explanation. This is believed to be an under the table payoff for Scott Davis' campaign. In doing so has the President and several members of the DSA Board who approved this expenditure committed a criminal act?"

• "Do [*sic*] to this there is a belief that these acts by the DSA President and Board (Directors at that time) should be investigated by the Salinas Police Department, the Monterey County District Attorney's Office or the Attorney General's Office."

• "The DSA President [Mitchell] has subjected all DSA members to scrutiny and potential Internal Affairs by utilizing our Law Firm Mastagni to request five years' worth of communications from your personal or business electronic devices. . . . The DSA President and the Board (Directors at the time) are on a fishing expedition, but they clearly did not take your right to privacy in consideration. Unfortunately, political desires have taken control of the DSA President and Board where they believe no one will hold them accountable for their actions."

Moses, Caldwell, and Warren filed their anti-SLAPP motion on July 2, 2019. The moving parties raised two issues as defeating appellants' probability of success on the merits: the fair comment privilege and lack of malice, both constitutional and statutory. In addition, they asserted the second and fourth causes of action, which are based on the anonymous email, were time-barred.

The trial court granted defendants' anti-SLAPP motion and dismissed the entire complaint based on its conclusion Mitchell and Davis, the public-figure plaintiffs, had "not proved by clear and convincing evidence that defendants' speech was motivated by malice." The court did not specifically mention the private-figure plaintiffs, Schneider and Pivotal Campaign Services, in the ruling. It did, however, find that the common-

7

interest privilege of Civil Code section 47 defeated the defamation claims as to these appellants. The court did not rule on the fair comment issue or on the limitations issue.

## DISCUSSION

The parties agree that the speech alleged in the complaint is protected activity under the first prong of an anti-SLAPP analysis. (See *Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 67.) We also agree. All the statements were connected with an issue of public interest – a campaign for political office. (Code Civ. Proc., § 425.16, subd. (e).) The press releases were made in a public forum in connection with an issue of public interest. (*Ibid.*) We also agree that Mitchell and Davis, in their capacities as president of the DSA and as a candidate for public office, respectively, are at the very least limited public figures. They must therefore meet a higher burden of proof if they are to maintain an action for defamation.

Schneider's status is not so clear. The trial court concluded that he was a private figure. His status, however, depends somewhat on the nature of the controversy in which he is involved. If the controversy is the campaign for sheriff or the use of DSA funds in general, then he is someone in the background. But the controversy as defined by the pleadings appears to us to be much narrower. It is, rather, whether money from DSA coffers was improperly, or even illegally, diverted to Schneider and his company as Davis's campaign manager. In that analysis, Schneider is not a background figure, but rather one of the central participants.

It is therefore possible that Schneider is a "vortex" public figure, that is, a person drawn into a controversy not of his own making. "[D]efamation decisions finding the complainants to be vortex public figures have typically involved persons who claimed they were defamed for private conduct after they injected themselves into matters of general public discussion or controversy." (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 25-26; see also *Ampex Corp. v. Cargle* (2005) 128 Cal.App.4th 1569, 1577 [voluntary act to influence resolution of issue required for limited purpose public figure].)

8

There is no evidence in this record that Schneider injected himself into the controversy regarding diversion of DSA funds to the Davis campaign. There is, for example, no evidence that he took to the media to deny the charges or to cast aspersions on his accusers. (Cf. *Curtis Publishing Co. v. Butts* (1967) 388 U.S. 130, 154-155 (*Curtis*).) We therefore agree with the trial court that Schneider and Pivotal Campaign Services are private figures.

The focus of the inquiry in this appeal is on the second prong of a SLAPP analysis: a likelihood of success on the merits. (See *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) And the focus can be distilled even more: Did plaintiffs present evidence of a prima facie case to overcome the constitutional and statutory protections for freedom of speech, specifically the requirement that the statements be made with "malice"?

**I.**         *New York Times* **Malice**

A defamation suit by a public official or a public figure must clear the extra hurdle put in place by *New York Times Co. v. Sullivan.* The public-figure plaintiff must prove, by clear and convincing evidence, that the defamatory statements were made with "actual malice," a term of art that means knowledge of falsity or reckless disregard of truth or falsity. (*New York Times Co. v. Sullivan* (1964) 254, 279-280, 285-286 [public official]; *Curtis, supra,* 388 U.S. 130, 155 [public figure must make "showing of highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers"].) Mere negligence is not sufficient. "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." (*St. Amant v. Thompson* (1968) 390 U.S. 727, 731; see also *Reader's Digest Ass'n v. Superior Court* (1984) 37 Cal.3d 244, 258 (*Reader's Digest*) ["The failure to conduct a thorough

9

and objective investigation, standing alone, does not prove actual malice, nor even necessarily raise a triable issue of fact on that controversy.]")

## II.        Statutory Malice

A private person ordinarily does not need to establish *New York Times* malice to maintain a defamation suit. Statutory malice can be hatred or ill will toward the plaintiff or merely a lack of reasonable grounds for belief in the truth of the publication. (*Taus, supra,* 40 Cal.4th at p. 721.) A private person may, however, have to overcome the "common interest" privilege afforded by Civil Code section 47, which provides in pertinent part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (c) [i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."

It is the defendant's burden to establish that the privilege applies, i.e., that the communication was made between the types of persons identified in the statute. If that burden is met, then the plaintiff has the burden of establishing malice. (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 915.) The malice required by the common interest privilege is proved by a preponderance of the evidence, less than the clear-and-convincing standard for *New York Times* malice. (See *Manguso v. Oceanside Unified School Dist.* (1984) 153 Cal.App.3d 574, 580.)

## III.        Plaintiff's Anti-SLAPP Burden

If the defendant/moving party establishes protected conduct as defined by Code of Civil Procedure section 416.26, then the burden shifts to the plaintiff to establish a probability of prevailing on the merits. This does not mean that the plaintiff must prove his or her case, but rather that the plaintiff's evidence, if credited, establishes a prima facie case. The court does not weigh evidence, but rather assesses the plaintiff's evidence to see "whether the plaintiff has stated a legally sufficient claim and made a prima facie

10

factual showing sufficient to sustain a favorable judgment." (*Baral v. Schnitt, supra,* 1 Cal.5th at p. 384-385.) It accepts the plaintiff's evidence as true and scrutinizes the defendant's evidence to ascertain whether it presents a defense as a matter of law. (*Id.* at p. 385.)

A prima facie case for defamation requires evidence of (1) a publication that (2) is false, (3) is defamatory, (4) is unprivileged, and (5) has a natural tendency to injure or causes special damage. (*Taus, supra,* 40 Cal.4th at p. 720.) Civil Code section 45 defines libel as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." In addition, as discussed above, a public-figure/public-official plaintiff must present clear and convincing evidence of malice: knowledge of falsity or reckless disregard of truth or falsity. (*New York Times, supra,* 376 U.S. at pp. 279-280.) Our Supreme Court has defined clear and convincing evidence of malice as "evidence sufficient to permit a trier of fact to find for the plaintiff and for an appellate court to determine that the resulting judgment """does not constitute a forbidden intrusion on the field of free expression."' [Citation]." (*Reader's Digest, supra,* 37 Cal.3d at p. 252.)

The plaintiff may prove actual malice through circumstantial evidence. (*Reader's Digest, supra,* 37 Cal.3d at p. 257.)[3] "'[Evidence] of negligence, of motive

---

3    In its ruling, the court below stated that "[a]ctual malice cannot be implied and must be proven by direct evidence." Respondents had made this argument in their motion, citing *Beilenson v. Superior Court* (1996) 44 Cal.App.4th 944, 950. *Beilenson*, in turn, cited two cases to support this ruling, *Time, Inc. v. Hill* (1967) 385 U.S. 374, and *Sanborn v. Chronicle Publishing Co.* (1976) 18 Cal.3d 406, 413 (*Sanborn*). The trial court cited these two cases as authority for the direct-evidence statement in the ruling.

*Sanborn* was an appeal from a jury verdict in plaintiff's favor in a defamation action. (*Sanborn, supra,* 18 Cal.3d at p. 409.) In upholding the verdict, the reviewing court did not state that direct evidence was required to establish malice. On the contrary, the court stated, "Although the evidence was also susceptible of other inferences, we conclude that there was substantial evidence of malice." (*Id.* at p. 414.) The majority opinion in *Time, Inc. v. Hill*, a right of privacy case, nowhere discusses direct versus circumstantial evidence as proof of malice. The court instead found fault with jury instructions that could have led the jury to base its finding of liability on something other than knowledge of falsity or reckless disregard of the truth. (*Time, Inc. v. Hill, supra,* 385 U.S. at pp. 394-396.)

11

and of intent may be adduced for the purpose of establishing, by cumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity.' [Citations.]  A failure to investigate [citation], anger and hostility toward the plaintiff [citation], reliance upon sources known to be unreliable [citations], or known to be biased against the plaintiff [citations] – such factors may, in an appropriate case, indicate that the publisher himself had serious doubts regarding the truth of his publication." (*Id.* at pp. 257-258.)

The likelihood-of-prevailing burden on a plaintiff opposing an anti-SLAPP motion is not a heavy one.  It can be carried by a showing that the claims have minimal merit.  And we accept favorable evidence as true.  (See *Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 485.)  We do not weigh evidence.  Instead, we look to see whether the defendant's evidence defeats the plaintiff's evidence as a matter of law.  (*Dickinson v. Cosby* (2019) 37 Cal.App.5th 1138, 1155 (*Dickinson*).)  We also bear in mind the clear and convincing standard of proof if the facts support this standard.  (*Id.* at p. 1156.)

## IV.        **Mitchell and Davis**

Mitchell's and Davis' contention, in a nutshell, is that the defendants could have arrived at the $28,000 or $31,000 figure they claimed constituted "under the table" payments to Schneider only by totaling *all* the payments DSA made to Schneider or to Pivotal Campaign Services in 2017 and 2018 – even those made *before* Davis began his campaign for sheriff – and labeling all of them as contributions to Davis' campaign. Having gone to the trouble of obtaining DSA's financial records and copies of DSA checks to Schneider and Pivotal Campaign Services, they either knew this was not true or were recklessly indifferent as to the truth or falsity of this claim.

We think Mitchell and Davis have presented evidence that, when accepted as we must in an anti-SLAPP analysis, establishes a prima facie case of malice by clear

---

At oral argument, respondents agreed that circumstantial evidence was sufficient to establish actual malice and that *Beilenson* was incorrect on this issue.

12

and convincing evidence.  Moses' visit to Mitchell to urge him to change the association's endorsement of Davis to one for Bernal, and Moses' displeasure at Mitchell's refusal, is circumstantial evidence of hostility toward Davis' campaign. Perhaps the most telling evidence, however, is the checks themselves, the dates of which were laid out in the March 22 email.  Respondents do not deny that they authored the email.[4]  At least four of the eight checks labeled in the email as "political paybacks" were written on dates before Davis announced his candidacy for sheriff in September 2017.[5] The email bolstered the claim of impropriety by listing three dates when Schneider and Mitchell had lunch at DSA's expense.  Two of the lunches took place in March 2017, the third in May.

All three respondents stated in their declarations that they looked at the Pivotal Campaign Services checks Moses had obtained from the DSA's accountants, so the argument would be that they must have seen that half of the checks predated the announcement of Davis' campaign for sheriff.  Moses also must have known that the checks totaled $28,250, not $31,000 as stated in his press conference.

In addition, the March 22 email could be seen as evidencing an understanding of Mitchell's explanation regarding the specific services provided to DSA by Schneider and Pivotal Campaign Services, an explanation dismissed with disbelief.[6] But Mitchell, Schneider, DSA treasurer Ted Avery, and the former C-unit representative (from November 2015 to December 2017) all stated in their declarations that none of the respondents approached them to inquire about association finances or spending after receiving the financial documents in February 2018 from the DSA's accountants and

---

[4]    Indeed, if they are not the authors, their effort to dismiss the second and fourth causes of action, based on the email, would seem to be pointless.

[5]    Another indication of recklessness is the characterization of the payments to Schneider in the March 22 email and subsequent press statements as payments made to Davis' "campaign manager."  In their declarations supporting the anti-SLAPP motion, respondents refer to Schneider as Davis' "campaign consultant."

[6]    "[Mitchell] is stating Schneider was hired for Data Services, Development, and Long Term Planning which we have trouble believing."  "Sounds like a lot of money for Long Term Planning or is it for something else?" (Referring to the $28,250 in checks to Schneider and his company.)

13

before publication of the email. It would therefore be fair to assume respondents acquired their knowledge of the specific services Schneider was providing to DSA from some other source. (See *Dickinson, supra,* 37 Cal.App.5th at pp. 1156-1160 [reasonable inferences support plaintiff's prima facie case].) Mitchell and other declarants also stated that none of the respondents approached them to complain about association spending before the email or, more importantly, to challenge the reason for paying Pivotal Campaign Services. (See *Balla v. Hall* (2021) 59 Cal.App.5th 652, 685 [purposeful avoidance of the truth distinguished from failure to investigate].)

Respondents' skepticism about the role of Schneider's company remained unexpressed until the email, notwithstanding the fact that both Warren and Moses were board members at different times before the email was sent out. A plausible explanation for this silence is that the skepticism was feigned.

Against this, respondents asserted in their declarations that their concern was a long-term lease for DSA office space and expenses unsupported by receipts, in addition to payments of "over $30,000" to Schneider. They also argue that a mere failure to investigate is not sufficient proof of malice.

It is true that a failure to investigate, of itself, is not evidence of malice. In this case, however, respondents did investigate. They obtained DSA's financial records and the checks to Schneider. A fact finder could reasonably find that they distorted the evidence in their hands in order to discredit Mitchell and Schneider and to derail Davis' campaign for sheriff. (See *Balla v. Hall, supra,* 59 Cal.App.5th at pp. 684-685.)

If respondents had confined their remarks to statements about the DSA office lease and the lack of receipts for certain expenses, they would have simply been criticizing Mitchell's lack of judgment or poor record-keeping. But when they started using phrases like "under the table," "political paybacks," "embezzlement," and money laundering, they crossed into different territory. We cannot say how a trier of fact will

14

view all this, but it does satisfy the minimal requirements for defeating an anti-SLAPP motion.

## V.	Schneider and Pivotal Campaign Services

The trial court found that Schneider and his company were private figures; they could therefore defeat the motion through prima facie evidence of malice established by a preponderance of the evidence, rather than by clear and convincing evidence.[7]  The court agreed with these plaintiffs that "the failure of defendants to investigate the facts that they expressed in the press conferences and by email, is a failure to use reasonable care in determining the truth or falsity of the statements."

The court, however, found that the "common interest" privilege of Civil Code section 47, subdivision (c), applied.  The privilege applies to a communication made, without malice, to a person interested in it by a person who is also interested in it. (Civ. Code, § 47, subd. (c).)  The court observed that the communication between the defendants and the deputy sheriff association regarding association finances met this requirement.  It therefore granted the motion with respect to Schneider and his company as well.

The common interest privilege applies to a communication made by interested persons to other interested persons only if the communication is made "without malice."  The prima facie evidence in this case showed more than just a "failure to use reasonable care in determining the truth or falsity of the statements," that is, mere negligence.  *If credited*, the evidence showed a reckless – if not deliberate – distortion of the results of respondents' investigation into DSA finances as it pertained to Schneider and his company, in other words, ""a showing that the defendant lacked reasonable

---

[7]	More specifically, Schneider is a private figure involved in a public issue.  He therefore does not need to present evidence of *New York Times* malice in a defamation action unless he seeks presumed and/or punitive damages.  The states may set the standards of liability, so long as they do not imposed liability without fault.  (See *Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 347-348.)  Schneider also presented prima facie evidence, which the trial court accepted, of special damages.

15

grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights."'" (*Taus, supra,* 40 Cal.4th at p. 721.) This is evidence of malice sufficient to overcome the common interest privilege *at this preliminary stage of the proceedings*.

**VI.          Fair Comment and Statute of Limitations**

Respondents raised a contention of fair comment in their anti-SLAPP motion. In its ruling on the motion, the court did not reach this issue.

Respondents also contended that the second and fourth causes of action of appellants' suit were barred by the one-year limitation period of Code of Civil Procedure section 340 subdivision (c). Having granted the motion on malice grounds, the trial court did not rule on this issue, either. We return the matter to the trial court to determine the effect of these arguments on the causes of action against respondents.

**DISPOSITION**

The order granting the anti-SLAPP motion against appellants on malice grounds is reversed. The matter is returned to the trial court to rule on the fair comment privilege and on respondents' contention that certain causes of action are time-barred. Appellants are to recover their costs on appeal.


                                             BEDSWORTH, ACTING P. J.

WE CONCUR:



GOETHALS, J.



ZELON, J.*

*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.