[S. F. No. 9905. In Bank.—May 25, 1923.]

THE HALE COMPANY (a Corporation), Appellant, v. E. J. LEA, Respondent.

[1] LIBEL — PRIVILEGED PUBLICATIONS — MALICE — SECTION 47 OF THE CIVIL CODE.—Absence of malice is an express limitation upon the privilege sanctioned by subdivision 3 of section 47 of the Civil Code, whereas, in this regard, the exemptions specified in the first and second subdivisions of said section are absolute and unqualified.

[2] ID.—DIRECTOR OF STATE LABORATORY—COMMUNICATIONS WITH OFFICIALS OF OTHER STATES—WHEN NOT PRIVILEGED.—A letter written by the director of the state laboratory of California to the Department of Agriculture of another state stating that a certain dealer in food products "was dealing in adulterated, rancid food products, to wit: walnut meats, which were unfit for human consumption," and that a certain number of cases of walnut meats were being shipped into the latter state which were adulterated, rancid, and unfit for human consumption, which statements

---

2. Official report by executive or administrative officer as libel and slander, note, 5 L. R. A. (N. S.) 163.

were alleged to be false, was not published in the proper discharge of official duty or in an official proceeding authorized by law, and is not a privileged publication.

[3] ID.—DUTIES OF DIRECTOR OF STATE LABORATORY.—The duties of the director of the state laboratory are, first, the examination and analyses of foodstuffs, and, second, the issuance of reports thereon to the state board of health. In other words, his duties are confined to scientific analyses and deductions. The director has no power to compel the procurement and submission of foodstuffs for examination. He examines the samples submitted to him and reports to the board, and here terminates his official activity; he has no part whatever in applying the results of his investigations. The act does not impose any duty upon a director to communicate the facts ascertained by him to anyone other than the state board of health.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Shortall, Judge. Reversed.

The facts are stated in the opinion of the court.

Norman A. Eisner for Appellant.

John H. Riordan for Respondent.

LENNON, J.—The adequacy of the allegations of the complaint in this action for libel is the question presented upon this appeal, a judgment for defendant having been entered after an order sustaining a demurrer to the complaint without leave to amend. The complaint under attack contains averments to the following effect: Plaintiff is engaged in the business of importing and dealing in food products and, in particular, walnut meats; defendant is director of the state laboratory of the state of California. For the purpose of sale, plaintiff had imported 280 cases of shelled walnut meats which were placed in cold storage in the city and county of San Francisco. Charging that these nuts were adulterated, rancid, and unfit for human consumption, the defendant, on November 20, 1919, caused the arrest of the manager of the plaintiff corporation and the quarantine of the walnut meats. On December 10, 1919, the manager was tried before a jury which brought in a verdict of "not guilty," with the added recommenda-

tion that the nuts which had been introduced in evidence be divided among the jurors. Defendant thereupon caused the quarantine to be lifted, but threatened further arrests if plaintiff attempted to sell nuts in California. For the purpose of avoiding further annoyance, plaintiff shipped the walnuts in question into the state of Washington, whereupon, on or about December 18, 1919, defendant, it is alleged, "maliciously and with the intent to injure the plaintiff" wrote to the Department of Agriculture in the city of Seattle, state of Washington, a letter which he mailed and which was received and read by those in charge of this department. In this letter defendant stated that "plaintiff was dealing in adulterated, rancid food products, to wit: walnut meats, which were unfit for human consumption," and further stated that the 280 cases of walnut meats previously referred to were being shipped into the state of Washington, identifying the shipment by particular description, and that they were adulterated, rancid, and unfit for human consumption. It is further alleged that these statements were "false, and were made maliciously to injure the plaintiff" and that "plaintiff has suffered damages by reason of the malicious and false statement of defendant as aforesaid in the sum of ten thousand ($10,000) dollars."

It is defendant's contention that the complaint fails to state a cause of action for libel for the reason that it affirmatively appears that the publication complained of was a privileged communication. The statements contained in the letter alleged to have been written by the defendant are claimed to fall within one or more of the three following subdivisions of section 47 of the Civil Code:

"A privileged publication is one made—

"1. In the proper discharge of an official duty.

"2. In any legislative or judicial proceeding, or in any other official proceeding authorized by law.

"3. In a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information."

[1]   The allegations of malice and "intent to injure," necessarily admitted by the demurrer, effectively dispose of the third subdivision above quoted, for the reason that absence of malice is an express limitation upon the privilege therein sanctioned, whereas, in this regard, the exemptions specified in the first and second subdivisions of section 47 are absolute and unqualified. (*Snively* v. *Record Publishing Co.*, 185 Cal. 565, 577 [198 Pac. 1]; *Stevens* v. *Snow*, *ante*, p. 58 [214 Pac. 968].)

[2]   Whether or not the alleged statement was published in the proper discharge of an official duty or in an official proceeding authorized by law is, therefore, the only question to be considered.

The office of director of the state laboratory, by virtue of which defendant claims to have been clothed with immunity, is created by an act approved March 11, 1907, commonly known as the Pure Food and Drug Act (Stats. 1907, p. 208), subsequently amended in unimportant particulars. That act reads in part as follows:

"Sec. 9.   For the purposes of this act there is hereby established a state laboratory for the analysis and examination of food and drugs, which shall be under the supervision of the state board of health, which laboratory shall be located at such place as the state board of health may select.

"The state board of health shall appoint a director of said laboratory and an assistant to such director, both of whom shall be skilled pharmaceutical chemists and analysts of food and drugs. *Said director shall perform all duties required by this act and which shall be required by the state board of health.* . . .

"Sec. 10.   The state board of health or its secretary shall cause to be made by said director of the state laboratory, examinations and analyses of food and liquor on sale in California suspected of being adulterated, mislabeled or misbranded, . . .

"Sec. 13.   Whenever said director shall find from his examination and analysis that adulterated, mislabeled or misbranded food has been on sale in this state, *he shall forthwith report to the secretary of the state board of health.* . . .

"Sec. 15.   The said director of the state laboratory shall make an annual report to the state board of health, on or

before August first of each year, upon adulterated or misbranded foods or liquors in which report shall be included the list of cases examined by him in which adulterants were found and the list of articles found mislabeled or misbranded and the name of the manufacturers, producers, jobbers and sellers. *Said report, or any part thereof, may, in the discretion of the State Board of Health, be included in the report which the State Board of Health is already authorized by law to make to the Governor. The State Board of Health may, in its discretion, publish any part of said report in any issue of its monthly bulletin."*

[3] The duties of the director of the state laboratory are, therefore, those "required by this act and which shall be required by the state board of health." The duties set forth in the act are, first, the examination and analyses of foodstuffs, and, second, the issuance of reports thereon to the state board of health. In other words, his duties are confined to scientific analyses and deductions. The director has no power to compel the procurement and submission of foods for examination. He examines the samples submitted to him and reports to the board, and here terminates his official activity; he has no part whatever in applying the results of his investigations. The act does not impose any duty upon the director to communicate the facts ascertained by him to anyone other than the state board of health. In so far as the ascertained facts are concerned, the discretion to publish or not to publish them is by the act expressly vested in the state board of health, and the act does not confer any authority upon the director to make a publication of the ascertained facts either as an official act or in the performance by him of an official duty.

Whether the director might have sent the letter with immunity if authorized by the state board of health, or whether the letter would have been privileged if sent by the board itself, are questions not within the scope of the present discussion, for neither of these facts is alleged in the complaint. Immaterial, also, is the argument urged by defendant that communications to authorities in sister states concerning the condition of food may be necessary in the proper administration of the pure food and drug acts. However that may be, the act in question manifestly does not invest the director of the state laboratory with author-

ity to communicate the facts ascertained by him to any board or person other than the state board of health, the legislature having proceeded, obviously, upon the theory that the scientific investigation required by the act should be performed by a person unencumbered with the responsibility of enforcing the law and deciding questions of public policy.

We conclude, therefore, that it does not appear from the complaint that the sending to the Department of Agriculture in Seattle, Washington, of a letter concerning the condition of foods examined by him was an official duty of the director of the state laboratory or part of an official proceeding authorized by law, and that the complaint does not allege a privileged publication.

The order striking out portions of the complaint was erroneous except as to the allegations concerning the arrest and trial of the manager of the plaintiff corporation, which are evidentiary and unnecessary to the statement of the cause of action.

The judgment is reversed, with instructions to vacate the order striking out portions of the complaint and sustaining the demurrer and to enter an order in accordance with the foregoing opinion.

Myers, J., Waste, J., Lawlor, J., and Wilbur, C. J., concurred.