[S. F. No. 20918. In Bank. May 17, 1962.]

S. M. SAROYAN, Plaintiff and Appellant, v. WILLIAM A.
BURKETT, Defendant and Respondent.

Marvin E. Lewis, Shirley, Saroyan, Cartwright & Peterson and Robert E. Cartwright for Plaintiff and Appellant.

Stanley Mosk, Attorney General, Harold B. Haas, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Defendant and Respondent.

THE COURT.—Plaintiff appeals from a judgment entered against him on the pleadings in an action to recover damages for allegedly defamatory statements made by defendant while he was Superintendent of Banks.

The allegations of the complaint may be summarized as follows: From January 1942 through December 1955 plaintiff was the attorney for the Superintendent of Banks in connection with all matters pertaining to the liquidation and conservatorship of Japanese banks in California. On December 12, 1958, defendant (who was Superintendent of Banks from August 1955 through January 1959) issued a press release to the effect that he had filed suit to determine the ownership of certain Japanese government bonds which had been held by the State Banking Department during liquidation of Japanese banks taken over during World War II and that, ignoring statements that the bonds were probably worthless, he had investigated the matter and found that some of them were of substantial value. Thereafter, plaintiff stated to the press

that the bonds were "completely worthless" and that even if they had value they would not belong to California but to the federal government.

In response, as reported in two San Francisco newspapers on December 16, 1958, defendant stated, among other things, that he had "fired" plaintiff, that plaintiff had been "completely repudiated in the past" and was "getting into this to justify his not doing anything about the bonds when he was in charge of them," that an investigation should be made to find out why the bonds were "left gathering dust in a safe deposit box," and that defendant wanted the "Justice Department" to look into the matter and "in particular, to [plaintiff's] conduct in office."

It is alleged that these statements were false and were maliciously made by defendant with knowledge of their falsity for the purpose of injuring plaintiff's reputation and professional standing.

■ The facts alleged by plaintiff must be taken as true, and the allegedly false and malicious statements are reasonably subject to being understood as charging or insinuating that plaintiff had been guilty of incompetence. In these circumstances the judgment against plaintiff on the pleadings is improper unless defendant enjoyed an absolute privilege protecting him from liability for maliciously making false and defamatory statements to the public. ■ An "absolute" privilege excludes liability for a publication notwithstanding that it is made with actual malice, whereas a "qualified" or "conditional" privilege does not protect a defendant who has acted maliciously.

■ Section 47 of the Civil Code sets forth the situations in which a communication is privileged and provides in subdivision 1 that a privileged publication is one made in the "proper discharge of an official duty."[1] Subdivision 1 does not show whether officials in discharging their duties have an

---

[1]Section 47 of the Civil Code provides: "A privileged publication or broadcast is one made—1. In the proper discharge of an official duty. 2. In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law. . . . 3. In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information. 4. By a fair and true report in a public journal, of (1) a judicial, (2) legislative, or (3) other public official proceeding, or (4) of anything said in the course thereof, or (5) of a verified charge or complaint made by any person to a public official, upon which complaint a warrant shall have been issued. 5. By

absolute privilege or, if so, to what extent. The use of the word "proper" to limit "discharge of an official duty" is at least as consistent with a qualified privilege as with an absolute one, and, when the statute was enacted, an absolute privilege for *executive* officials with respect to defamation had not yet been recognized by the courts.

Section 47 was enacted in 1872, and subdivision 1 has remained the same since that time.[2] The annotation to section 47 made by the Code Commission in 1872 is significant. In a preface to the annotated edition of the Civil Code, it was said that the purpose of the notes to the various sections was to explain the "reason" and "intent" of the law and that, wherever there was an intent to modify existing law, the reasons for the change would be given. With respect to section 47, the annotation consists solely of the citation of a textbook and three New York cases, and according to these authorities an absolute privilege was confined to statements made in the course of judicial or legislative proceedings. The cases that contain language to the effect that the privilege conferred by subdivision 1 is an absolute one, e.g., *Hale Co.* v. *Lea,* 191 Cal. 202, 205 [215 P. 900]; *Snively* v. *Record Publishing Co.,* 185 Cal. 565, 577 [198 P. 1]; *Irwin* v. *Newby,* 102 Cal.App. 110, 115 [282 P. 810, 283 P. 370], did not consider the background of the subdivision or the meaning to be given to the word "proper" therein, and the only case involving an executive official, *Hale Co.* v. *Lea, supra,* held that the official was not privileged because he was acting outside the scope of his authority.

It thus appears that the problem of the extent, if any,

a fair and true report of (1) the proceedings of a public meeting, if such meeting was lawfully convened for a lawful purpose and open to the public, or (2) the publication of the matter complained of was for the public benefit."

[2]As originally enacted, the other subdivisions of the section read: "2. In testifying as a witness in any proceeding authorized by law to a matter pertinent and material, or in reply to a question allowed by the tribunal. 3. In a communication, without malice, to a person interested therein, by one who was also interested, or who stood in such a relation to the former as to afford a reasonable ground for supposing his motive innocent, or who was requested by him to give the information. 4. By a fair and true report in a newspaper, without malice, of a judicial, legislative, or other public official proceeding, or of anything said in the course thereof."

Soon after the enactment of section 47, subdivision 2 was amended in the legislative session of 1873-1874 to read: "In any legislative or judicial proceeding, or in any other official proceeding authorized by law."

to which executive officials have an absolute privilege cannot be satisfactorily resolved on the basis of the statutory language, the historical background of the subdivision or the California cases cited above, and a solution must be found by considering the treatment of the subject in the law generally. This approach is particularly appropriate in regard to the statute before us because it was evidently intended as a codification of the general principles developed by the courts.

An absolute privilege for executive officials with respect to defamation was first recognized more than 20 years after the enactment of section 47. In *Spalding* v. *Vilas* (1896) 161 U.S. 483, 493, 498-499 [16 S.Ct. 631, 40 L.Ed. 780], the Postmaster General of the United States was held to be absolutely privileged in regard to statements made to persons having business with his department. It has also been held that a cabinet officer is absolutely privileged with respect to statements to the press if they are connected with his official duties. (*Glass* v. *Ickes*, 117 F.2d 273, 281 [132 A.L.R. 1328, 73 App. D.C. 3]; *Mellon* v. *Brewer*, 18 F.2d 168, 171-172 [57 App. D.C. 126].) Similarly, state decisions have recognized an absolute privilege as to statements made to the general public by a Governor and an Attorney General. (*Ryan* v. *Wilson*, 231 Iowa 33 [300 N.W. 707, 715-716]; *Matson* v. *Margiotti*, 371 Pa. 188 [88 A.2d 892, 899-900].)

 The rule as it has developed with respect to both federal and state officials of high rank is set forth in section 591 of the Restatement of Torts, which reads: "The President of the United States and the Governor of any State or Territory thereof, cabinet officers of the United States and the corresponding officers of any State or Territory thereof are absolutely privileged to publish false and defamatory matter of another in the exercise of an executive function, if the matter has some relation to the executive proceeding in which the officer is acting."

 We are in accord with the rule granting an absolute privilege to state officials corresponding in rank to federal cabinet members. Defendant was such an official. The Superintendent of Banks is the head of the State Banking Department, appointed by the Governor and holding office at his pleasure; he is a member of both the Board of Investment and the Governor's Council. (Fin. Code, §§ 210, 211.) Defendant was acting in the exercise of an executive function when he defended the policy of his department, and his statements

were related to the defense of that policy. Accordingly defendant was protected by an absolute privilege.

The judgment is affirmed.

Appellant's petition for a rehearing was denied June 13, 1962.