**Decided September 6, 1983**

IN THE DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| CALISTRO M. IZUKA, individually and in his capacity as a former Director and Vice Chairman of the Economic Development Loan Fund of the Commonwealth of the Northern Mariana Islands,<br><br>        Plaintiff,<br><br>        vs.<br><br>CARLOS S. CAMACHO, individually and in his capacity as Governor of the Commonwealth of the Northern Mariana Islands,<br><br>        Defendant. | CIVIL ACTION NO. 81-0036<br><br><br><br><br><br><br><br>MEMORANDUM OPINION |

## I. STATEMENT OF THE CASE

Plaintiff Calistro M. Izuka filed a complaint with this Court on June 29, 1981, charging that the defendant, then Governor Carlos S. Camacho, wrongfully attempted to remove the plaintiff from his position as Director of the Economic Development Loan Fund on June 4, 1981. The plaintiff sought both declaratory relief invalidating his removal from office and damages for defamation resulting from a letter of discharge, sent by the defendant to the plaintiff, containing statements explaining the reasons for the discharge.

Défendant has now moved the court for an order granting him summary judgment on plaintiff's second cause of action. Defendant contends that as the chief executive officer of the Commonwealth, acting within the outer perimeter of his official duties at the time he wrote the allegedly defamatory letter purporting to remove plaintiff, he is entitled to absolute immunity from civil liability. Defendant claims that in view of his status as governor at the time of the events in issue, the law compels dismissal of the defamation count.

We agree with defendant, that as a matter of law, he is absolutely immune from civil liability for actions undertaken in his official capacity as Governor of the Commonwealth of the Northern Mariana Islands. For the reasons stated herein, defendant's motion for summary judgment on plaintiff's second cause of action is granted.

///
///
///
///
///
///
///
///
///
///
///

727

## II. STANDARD OF REVIEW

In considering defendant's motion for summary judgment the Court must determine whether there exists any genuine issue of material fact. U.S. v. First National Bank. 652 F.2d 882, 887 (9th Cir. 1981); 10 C. Wright and A. Miller, Federal Practice and Procedure, § 2725 at 496 (1973). Summary judgment is proper if, when viewing the evidence in the light most favorable to the party opposing the motion, the movant is clearly entitled to judgment as a matter of law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Radobenko v. Automated Equipment Corp., 520 F.2d 540 (9th Cir. 1975).

In this case the only issue to be resolved is whether defendant Governor is liable for defamation for statements made in a letter of dismissal to plaintiff. This question is not con- tingent upon any genuine issue of material fact and, as a result, the Court can determine the relevant issues of law raised in the present motion for summary judgment.

As a matter of law, an absolute immunity defeats a suit for defamation at the outset, so long as the official's actions were within the scope of the immunity. The type of limited inquiry required to determine the dispositive question of what constitutes the outer perimeter of an official's duties may typically be dealt with on a motion for summary judgment. Expeditions Unlimited v. Smithsonian Institution, 566 F.2d 289 (C.A.D.C. 1977)(en banc) cert. denied 438 U.S. 915.

///

728

III.  DECISION

As the chief executive officer of the Commonwealth, the governor was acting within the outer perimeter of his official duties at the time he wrote the allegedly defamatory letter purporting to remove plaintiff, and is thus entitled to absolute immunity from civil liability.  Because defendant possessed discretionary functions ex officio and acted in the line of his official duties in publishing the alleged libel, the law compels that we grant defendant's motion for summary judgment and dismiss plaintiff's cause of action.

The rule is well established that superior executive officers and department heads are immune to liability in a civil suit for damages on account of acts undertaken or official communications made by them in the line of official duty.  Spalding v. Vilas, 161 U.S. 483, 498, 4 L.Ed. 780, 785, 16 S.Ct. 631 (1896); Saroyan v. Burkett, 21 Cal.Rptr. 557, 371 P.2d 293 (1962); Colaizzi v. Walker, 542 F.2d 969 (C.A. 7 1976), cert. denied, 430 U.S. 960; Barr v. Matteo, 360 U.S. 564, 3 L.Ed.2d 1434 (1959); Gregoire v. Biddle, 177 F.2d 579, (C.A. 2 1949).

Indeed, the rule has not been limited by providing the privilege solely as a "badge or emolument of exalted office," Barr v. Matteo, 360 U.S. 564, supra at 573-74, but has been extended to provide official immunity to virtually all federal executive and administrative officers.  It is the legal expression of a policy designed to aid in the effective functioning of government.

This policy was well expressed by Learned Hand, J., in Gregoire v. Biddle, 177 F.2d 579, 581 (C.A. 2 1949):

> It does indeed go without saying that an official who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith... [I]t has been thought in the end better to have unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

Following the policy set forth in Gregoire, supra, the Supreme Court in Barr v. Matteo, supra, stated:

> "[i]t is not the title of his office but the duties with which the ... officer is entrusted--the relation of the act complained of to 'matters committed by law to his control or supervision' [citation]--which must provide the guide in delineating the scope of the rule which clothes the official acts of the executive

officer with immunity from civil defamation suits."  3 L.Ed.2d at 1441-1442).

The Court went on to provide a test for application of the immunity doctrine.  At 3 L.Ed.2d 1443, the Court stated:

> That [defendant] was not required by law or by direction of his superiors to speak out cannot be controlling in the case of an official of policy-making rank, for the same considerations which underlie the recognition of the privilege as to acts done in connection with a mandatory duty apply with equal force to discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority.

> The fact that the action here taken was within the outer perimeter of [defendant's] line of duty is enough to render the privilege applicable, despite the allegations of malice in the complaint... Ibid. (footnote omitted; emphasis in original)

What has emerged from the post-Barr cases is a general rule that the act complained of need only have some reasonable connection to official duties in order to invoke absolute immunity Indeed, the Restatement 2d, Torts, has stated the rule set forth in Barr and Gregoire as follows:

> § 591.  Executive and Administrative Officers

> An absolute privilege to publish defamatory matter concerning another in communications made in the performance of his official duties exists for:

///                                                             /

> (a)  any executive or administrative
>       officer of the United States; or
>
> (b)  a governor or other superior
>       executive officer of a state.

The immunity (or privilege) thus accorded is absolute: "[N]o action for defamation can be maintained against any one of the designated executive officers irrespective of his purpose in making the publication." Comment d. to § 591 Restatement 2d, Torts.

The duties of the Office of the Governor encompass the broadest range of discretionary and policy-making functions of any official in the Commonwealth. Section I of Article III of the Commonwealth Constitution provides that "[t]he executive power of the Commonwealth shall be vested in a governor who shall be responsible for the faithful execution of the laws." The very brevity with which the Governor's constitutional powers are defined is an indication of the sweeping nature of his discretionary functions. Comment c to § 591, Restatement 2d, Tort, states:

> All of the state courts that have
> considered the question have agreed
> that the absolute privilege...
> protects the superior officers of
> the State governments, including at
> least the governor.....[1]

---

[1] This jurisdiction has by statute adopted the "rules of the common law, as expressed in the restatements of the law approved by the American Law Institute [,]" as the rule of decision in the courts..." (1 TTC § 103)

The broad discretion accompanying the office of Governor being clear, the question becomes, whether publication of the allegedly defamatory letter in issue was "within the outer perimeter of [defendant's] line of duty..." Barr v. Matteo, supra, 3 L.Ed.2d at 1443. To find that the governor was acting outside the perimeter of his line of duty, in setting forth to plaintiff the reasons for his discharge, would be to completely disregard the fundamental policy underlying the doctrine of official immunity

The letter in suit was well within the outer perimeter of defendant's line of duty. The Governor thought it was within his executive powers to dismiss plaintiff from his appointed position; he had sought the advice and been assured by the Commonwealth's chief legal officer that this was so. That in the final analysis the Governor was wrongly advised, and in fact lacked the unfettered power of removal, does not serve to divest him of the immunity. To hold otherwise would contradict the fundamental rational of the Barr rule.

DATED this 6th day of SEPT., 1983.

_____
ALFRED LAURETA
United States District Judge