Philip M. McQUIRK, Plaintiff–
Appellant,

v.

Louis Kevin DONNELLEY, Sheriff
Glenn County; Glenn County,
Defendants–Appellees.

No. 97–17174.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 12, 1999

Filed Aug. 20, 1999

Brett L. McKague, San Francisco, California, and Geoffrey O. Evers, Sacramento, California, for the plaintiff-appellant.

Leonard G. Krup, Frost, Krup & Atlas, Willows, California, for the defendants-appellees.

Stephen D. Underwood, Rancho Cordova, California, for amicus curiae CSAC Excess Insurance Authority.

Richard R. Terzian, LeBoeuf, Lamb, Greene, & McRae, Los Angeles, California, for amicus curiae California State Association of Counties.

Before: FLETCHER and TASHIMA, Circuit Judges, and FITZGERALD,* District Judge.

TASHIMA, Circuit Judge:

Philip McQuirk, a former employee of the Glenn County, California, Sheriff's Office, applied for a job with the Mountlake Terrace, Washington, Police Department. The day before McQuirk was to begin working, Louis Donnelley, the Sheriff of Glenn County, made a number of allegedly defamatory statements about McQuirk's performance as an employee of the Glenn

---

* The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation.

County Sheriff's Office to Commander Scott Smith of the Mountlake Terrace Police Department. As a result of these statements, Smith rescinded the offer of employment to McQuirk. McQuirk sued Donnelley and Glenn County for defamation and other related torts. The district court granted summary judgment to both defendants on the grounds that McQuirk had consented to the disclosure of this information and that defendants were immune from liability under California law. McQuirk appeals, contending that the district court misapplied California law. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand for further proceedings.

## I.

McQuirk worked for the Glenn County Sheriff's Office from 1976 until he retired for medical reasons in 1990. Approximately five years after his retirement, McQuirk applied for the non-peace officer position of Property Room Manager with the Mountlake Terrace Police Department. As part of the application process, McQuirk signed a release that authorized the recipient to furnish the Mountlake Terrace Police Department with information about "me, my work record, my reputation, my financial and credit status," and excused the recipient from any liability resulting from the provision of this information.[1] On April 11, 1995, McQuirk signed a form consenting to be hired and was instructed to report to work on April 13, 1995.

On April 12, 1995, Commander Smith returned a phone call from Donnelley. McQuirk alleges that Donnelley made five defamatory statements about him during the twenty-minute conversation: (1) that a splitting maul had disappeared from the evidence room over which McQuirk had responsibility and that the maul had reappeared after McQuirk was notified that its owner wanted it; (2) that McQuirk had submitted a false insurance claim for damage to the tires of his car; (3) that McQuirk had committed perjury while testifying in a criminal case; (4) that Donnelley personally knew that McQuirk had fabricated a police report; and (5) that McQuirk had stolen a ring from another officer in the sheriff's locker room. Donnelley was later told that a ring had in fact not been stolen, but he did not so notify Smith. It is disputed whether Donnelley informed Smith that some of his comments were based on rumor. Smith subsequently rescinded McQuirk's offer of employment.

McQuirk filed suit in Washington state court against Donnelley and Glenn County, seeking damages and injunctive relief for defamation, interference with business expectancy, and outrage. Defendants removed the case to the United States District Court for the Western District of Washington and then secured a change of venue to the Eastern District of California. McQuirk amended his complaint to include claims for negligent and intentional infliction of emotional distress. The district court granted defendants' motion for summary judgment.

McQuirk contends that the district court erred in granting summary judgment with respect to his claims for defamation, interference with business expectancy, outrage, and intentional infliction of emotional dis-

---

1. The release stated, in pertinent part: I respectfully request and authorize you to furnish the above listed Police Departments any and all information that you or your organization have concerning me, my work record, my reputation, my financial and credit status. Please include any and all medical, physical and mental records or reports including all information of a confidential or privileged nature and photo copies of same if requested. This information is to be used to assist the department in determining my qualifications and fitness for the position I am seeking with the Police Department.... I hereby release you, your organization or others from any liability or damage which may result from furnishing the information requested above.

tress.[2]

## II.

■ We review the grant of summary judgment de novo. *See Griggs v. Pace American Group, Inc.,* 170 F.3d 877, 879 (9th Cir.1999). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See id.* Further, because this case is premised on diversity jurisdiction and the substantive law of California applies,[3] we must render the decision we believe the California Supreme Court would render. *See Elliott v. City of Union City,* 25 F.3d 800, 802 n. 3 (9th Cir.1994).

## III.

McQuirk contests the district court's grant of summary judgment on two grounds. First, he contends that the release did not constitute consent to the making of defamatory statements and, if it did, it violates California law. Second, he argues that Donnelley's provision of a job reference was not a discretionary act entitled to immunity from liability under California law.

### A. Consent

■ Although we agree with the district court that the scope of the release is broad enough to encompass Donnelley's statements, we conclude that the release violates § 1668 of the California Civil Code by shielding Donnelley from liability for intentional torts. Therefore, the release is not enforceable.

■ Section 1668 provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Cal. Civ.Code § 1668 (West 1999). McQuirk's claims for defamation, interference with business expectancy, outrage, and intentional infliction of emotional distress are all intentional wrongs. *See Miller v. National Broad. Co.,* 187 Cal.App.3d 1463, 232 Cal.Rptr. 668, 681 (Ct.App.1986) (intentional infliction of emotional distress);[4] *Ramona Manor Convalescent Hosp. v. Care Enters.,* 177 Cal.App.3d 1120, 225 Cal.Rptr. 120, 124 (Ct.App.1986) (intentional interference with prospective economic advantage); 5 B.E. Witkin, SUMMARY OF CALIF. LAW, *Torts,* § 471, at 558 (9th ed.1988) (defamation).

The California Court of Appeal has noted that "contractual releases of future liability for fraud and other intentional wrongs are invariably invalidated." *Farnham v. Superior Court,* 60 Cal.App.4th 69, 70 Cal.Rptr.2d 85, 86 (Ct.App.1997). In *Farnham,* the court was presented with the issue of whether a waiver in an employment agreement precluded a claim for defamation. Farnham sued his former employer and two of its directors, contending that the waiver violated § 1668. *See id.* at 86–88. The court found the waiver not to contravene § 1668 because the waiver only protected the directors from liability, not the corporation. *See id.* at 89–90. Because Farnham "retain[ed] his right to seek redress from the corporation," *id.* at 90, the contractual waiver was enforceable. *Farnham* thus stands for the proposition that § 1668 invalidates the total release of

---

2. The district court awarded summary judgment to Donnelley and Glenn County on McQuirk's claim of negligent infliction of emotional distress because McQuirk failed to produce any evidence that he had suffered a physical injury on account of Donnelley's behavior. McQuirk does not contest this issue on appeal.

3. The parties seem to agree that California law applies. We do not question this assumption. *See Brobeck, Phleger & Harrison v. Telex Corp.,* 602 F.2d 866, 871 n. 2 (9th Cir.1979).

4. Outrage is "a variation of the tort of intentional infliction of emotional distress." *Ribas v. Clark,* 38 Cal.3d 355, 212 Cal.Rptr. 143, 696 P.2d 637, 643 (1985).

future liability for intentional wrongs. Therefore, under *Farnham,* the release McQuirk signed is invalid.[5]

Donnelley contends that we should apply the Second Restatement of Torts instead of § 1668. According to Donnelley, McQuirk's consent cloaked Donnelley's statements in an absolute privilege, because "[e]xcept as stated in § 584, the consent of another to the publication of defamatory matter concerning him is a complete defense to his action for defamation." Restatement (Second) of Torts § 583 (1977).

The court applied § 583 of the Restatement in *Royer v. Steinberg,* 90 Cal.App.3d 490, 153 Cal.Rptr. 499 (Ct.App.1979), a case involving a school superintendent's suit for defamation against a school board. The school board sent the superintendent a confidential letter detailing the reasons for his demotion. *See id.* at 502. The superintendent subsequently caused to be published in a newspaper an "open letter" to the public that reproduced the school board's confidential letter, included his response, and requested that the school board prove its allegations. *See id.* The court found absolutely privileged the school board's reply, noting that "[o]ne of the oldest and most widely recognized defenses to the publication of defamatory

matter is the doctrine of consent...." *Id.* at 503 (citing Restatement (Second) § 583).

The California courts have applied this doctrine of consent to a contractual release once before. In *Kelly v. William Morrow & Co.,* 186 Cal.App.3d 1625, 231 Cal.Rptr. 497 (Ct.App.1986), Kelly sued the publishers of a book for, among other things, defamation arising from the book's portrayal of Kelly. *See id.* The court found the scope of the waiver Kelly had signed to be ambiguous and therefore not an appropriate basis for summary judgment. *See id.* at 502–03. What is important for our purposes is what the court did not decide: at no time did the court discuss whether the waiver was invalid under § 1668.

■■ When faced with conflicting authority, we must predict what the California Supreme Court would do. *See Elliott,* 25 F.3d at 802 n. 3. We conclude that the California Supreme Court would apply § 1668 and invalidate McQuirk's release.[6] First, as *Farnham* recognized, "contractual releases of future liability for ... intentional wrongs are invariably invalidated." 70 Cal.Rptr.2d at 86. This is borne out by the case law, save for *Kelly.* Second, the language of § 1668 explicitly renders invalid contracts that release liability for "will-

---

**5.** California courts have invalidated releases based on § 1668 in a number of cases. In *Loughan v. Harger–Haldeman,* 184 Cal.App.2d 495, 7 Cal.Rptr. 581 (Ct.App.1960), the court noted that a contractual waiver of rights for damages for trespass and assault arising from the attempted repossession of a car was invalid under § 1668. *See id.* at 588. The court stated, "[o]bviously, one may not contract for exemption from the consequences of wilful misconduct." *Id.* In *Blankenheim v. E.F. Hutton & Co., Inc.,* 217 Cal.App.3d 1463, 266 Cal.Rptr. 593 (Ct.App.1990), the court concluded that a hold harmless agreement between a brokerage firm and individual investors violated § 1668 because negligent misrepresentation is a species of fraud, as the term "fraud" is used in § 1668. *See id.* at 599. In so finding, the court noted that "[u]nder [§ 1668], a party may not contract away liability for fraudulent or intentional acts or for negligent violations of statutory law." *Id.* at 598. *See also Baker Pac. Corp.*

*v. Suttles,* 220 Cal.App.3d 1148, 269 Cal.Rptr. 709, 712 (Ct.App.1990) (concluding that the release in question "clearly includes a release from liability for fraud and intentional acts and thus on its face violates the public policy as set forth in Civil Code section 1668").

**6.** We note that this outcome does not leave employers unprotected when giving recommendations regarding former employees to prospective employers. California law makes clear that employers are entitled to a qualified privilege when giving recommendations. *See* Cal. Civ.Code § 47(c); *Neal v. Gatlin,* 35 Cal. App.3d 871, 111 Cal.Rptr. 117, 121 (Ct.App. 1973); *Lesperance v. North Am. Aviation, Inc.,* 217 Cal.App.2d 336, 31 Cal.Rptr. 873, 875–76 (Ct.App.1963). What we hold today is that employers may not prospectively contract for *more than* the qualified privilege granted to them under California law.

ful injury to the person or property of another." Although the California Supreme Court has recognized that § 1668's similar prohibition on releases of liability for negligent violations of the law is subject to certain exceptions,[7] the California courts have yet to acknowledge any such exception for releases of future liability for intentional torts. Third, in the more recent case of *Farnham*, the court directly applied § 1668 to a claim for defamation, while in *Kelly*, the court interpreted the release without mentioning § 1668. Because the *Kelly* court may have failed to discuss § 1668 merely because the issue was not raised by the parties, we conclude that *Farnham* represents the better view of which approach the California Supreme Court would take in this case.[8] *Accord Kellums v. Freight Sales Ctr., Inc.*, 467 So.2d 816, 817–18 (Fla.Ct.App.1985); *but see Smith v. Holley*, 827 S.W.2d 433, 438 (Tex.App.1992).

Therefore, we hold that the district court erred in granting summary judgment on the basis of the release because the release is unenforceable under § 1668.

### B. *Statutory Immunity and Privilege*

Donnelley raised absolute defenses to liability based on § 820.2 of the California Government Code and § 47(a) of the California Civil Code. The district court granted summary judgment pursuant to § 820.2. We conclude that neither statute applies.

### 1. Section 820.2

■ Section 820.2 of the California Government Code states: "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2 (West 1999). McQuirk contends that the district court erred in granting summary judgment on this basis because Donnelley's conduct was not discretionary, but rather was ministerial. We agree.

The California Supreme Court still applies the analysis it set forth over thirty years ago in *Johnson v. California*, 69 Cal.2d 782, 73 Cal.Rptr. 240, 447 P.2d 352 (1968), the first case in which it construed § 820.2. *See Caldwell v. Montoya*, 10 Cal.4th 972, 42 Cal.Rptr.2d 842, 897 P.2d 1320, 1325 (1995). In *Johnson*, the court was confronted with the issue of whether a parole officer was immune from liability arising from his failure to warn foster parents of the dangerous propensities of a youth placed in their care. *See* 73 Cal. Rptr. 240, 447 P.2d at 354. The court found the parole officer's decision not to warn the foster parents to be ministerial and therefore concluded that there was no

---

7. In *Tunkl v. Regents of the University of Calif.*, 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441 (1963), the California Supreme Court recognized that one party may shift the risk of negligence to another through a release unless the release involves the "public interest." *See id.* at 443–46.

8. Donnelley argues that § 1668 is inapposite because the release waived liability for torts and therefore principles of contract law do not apply. California courts, however, have routinely applied § 1668 to releases of liability for torts. *See, e.g., Tunkl*, 383 P.2d at 441–42; *Farnham*, 70 Cal. Rptr.2d at 90; *YMCA v. Superior Court*, 55 Cal.App.4th 22, 63 Cal. Rptr.2d 612, 614–15 (Ct.App.1997).

Donnelley argues in the alternative that if the release is subject to § 1668, he is a third party beneficiary who may enforce the contract on a theory of promissory estoppel. We reject this argument because a third party beneficiary cannot recover under a contract that is unenforceable. *See* 1 B.E. Witkin, SUMMARY OF CALIF. LAW, *Contracts*, § 662, at 601 (9th ed.1987).

Finally, the district court rejected McQuirk's argument that the release was unenforceable under § 1668 because it found the release to constitute consent to the release of information relevant to McQuirk's fitness for employment, not defamation. We find this distinction to be an overly formal one. Section 1668 expressly prohibits releases that "directly or indirectly" exempt a party from certain kinds of liability.

immunity. *See id.* at 361–63. In reaching this conclusion, the court rejected a literal interpretation of the term "discretion" in § 820.2. The California Supreme Court has since remarked, "[o]ur opinion [in *Johnson*] reasoned as follows: Almost all acts involve some choice among alternatives, and the statutory immunity thus cannot depend upon a literal or semantic parsing of the word 'discretion.'" *Caldwell,* 42 Cal.Rptr.2d 842, 897 P.2d at 1325. Instead, the *Johnson* court distinguished between "the 'planning' and 'operational' levels of decision-making." *Johnson,* 73 Cal. Rptr. 240, 447 P.2d at 360. Only the former are immune from liability. The *Johnson* court limited planning level judgments to those judgments that have been delegated to a particular branch of government:

> The [*Johnson*] court concluded that section 820.2 confers immunity only with respect to those "basic policy decisions" which have been committed to coordinate branches of government, and does not immunize government entities from liability for subsequent ministerial actions taken in the implementation of those basic policy decisions. This distinction is sometimes characterized as that between the "planning" and the "operational" levels of decision-making.

*Lopez v. Southern Cal. Rapid Transit Dist.,* 40 Cal.3d 780, 221 Cal.Rptr. 840, 710 P.2d 907, 915 (1985) (citations omitted); *see Caldwell,* 42 Cal.Rptr.2d 842, 897 P.2d at 1326 (noting that "[i]mmunity is reserved for those '*basic policy decisions* [which have] ... been [expressly] committed to coordinate branches of government,' and as to which judicial interference would thus be 'unseemly'") (alteration and emphasis in original) (quoting *Johnson,* 73 Cal.Rptr. 240, 447 P.2d at 360).

For example, the *Johnson* court found the parole officer's decision to parole the youth to be a planning level decision warranting immunity because the state legislature had granted the Youth Authority the power to make parole decisions. *See*

*Johnson,* 73 Cal.Rptr. 240, 447 P.2d at 361. The decision not to warn the foster parents of the youth's violent propensities, however, was a judgment as to how to implement the policy. As an operational judgment, there was no immunity under § 820.2. *See id.* at 362. The California Supreme Court reached a similar conclusion in *Lopez,* in which bus passengers who had been injured by other passengers sued a public transportation agency because, they contended, the driver failed to protect them. *See* 221 Cal.Rptr. 840, 710 P.2d at 908, 915. The court found the bus driver's decision as to how to intervene to be an operational one because the bus driver was merely implementing the legislature's policy decision that bus drivers must protect their passengers. *See id.* at 915–16. Therefore, the transportation agency was not immune.

Applying this analytical framework, we conclude that the California Supreme Court would find Donnelley's statements to be an operational judgment rather than a planning judgment; therefore, Donnelley is not immune from liability. Donnelley's decision to provide references to other law enforcement agencies about past employees arguably resembles a policy decision entitled to immunity under § 820.2. The decision as to what to include in the reference, however, is merely an implementation of that larger policy. Providing a particular reference is analogous to the parole officer's decision whether to warn foster parents of the danger posed by a parolee and what information to provide.

*Sanborn v. Chronicle Publ'g Co.,* 18 Cal.3d 406, 134 Cal.Rptr. 402, 556 P.2d 764 (1976), is similar. In *Sanborn,* the Clerk of the City and County of San Francisco released certain attached funds to the plaintiff, and was later reprimanded for releasing the funds without a court order. *See id.* at 765–66. Subsequently, the Clerk made derogatory statements to a reporter about how the plaintiff had tricked him into releasing the funds, and the plaintiff sued for defamation. *See id.*

at 766. The court found that § 820.2 did not apply because "[a] governmental officer's discussions with the public or press regarding the functioning of his office would seem ... to fall within the category of those routine, ministerial duties incident to the normal operations of that office." *Id.* at 769. The Clerk's statements were not the sort that result in policies affecting the way in which a public entity governs. Like the Clerk's statements, Donnelley's statements to Smith about McQuirk's reputation and work habits constituted a low-level decision that did not concern the way in which the sheriff's office conducted its business. Donnelley exercised no discretion, as defined under the *Johnson* regime.

Further, there is nothing to indicate that there has been an express commitment of authority to law enforcement agencies to decide what to provide in an employment reference. In *Caldwell,* the California Supreme Court held that members of a school board were immune from liability for their decision not to renew the school superintendent's contract in part because a state statute gave the school board authority over the superintendent's employment. *Caldwell,* 42 Cal.Rptr.2d 842, 897 P.2d at 1327. The court found that "[t]he matter is therefore 'expressly entrusted to a coordinate branch of government' at its highest level." *Id.* (quoting *Johnson,* 73 Cal.Rptr. 240, 447 P.2d at 360). We have found no comparable delegation of authority here, nor have the parties indicated any.

We are mindful of the importance of an effective law enforcement system, and the concomitant need to hire capable, responsible individuals. However, "[i]n the absence of a legislative declaration, we cannot say that [law enforcement] performs a function so much more important than that of other state agencies as to warrant total

immunity." *Johnson,* 73 Cal.Rptr. 240, 447 P.2d at 363–64. Therefore, we must conclude that Donnelley was not immune pursuant to § 820.2, and that the district court erred in granting summary judgment on this basis.[9]

#### 2. Section 47(a)

▮▮ Donnelley argues that his statements were privileged under § 47(a) of the California Civil Code. Section 47(a) provides that "[a] privileged publication or broadcast is one made ... (a) In the proper discharge of an official duty." Cal. Civ.Code § 47(a) (West 1999). This privilege is absolute. *See Saroyan v. Burkett,* 57 Cal.2d 706, 21 Cal.Rptr. 557, 371 P.2d 293, 295–96 (1962). We conclude, however, that Donnelley's statements were not privileged under § 47(a) for the same reasons that he is not immune pursuant to § 820.2.

▮▮ The statements of local officials may be privileged. *See Copp v. Paxton,* 45 Cal.App.4th 829, 52 Cal.Rptr.2d 831, 842 (Ct.App.1996) (applying privilege to county emergency services officer); *Royer,* 153 Cal.Rptr. at 504–05 (applying privilege to school board trustees). As Sheriff, Donnelley exercises significant responsibilities. *See* Cal. Gov't Code §§ 26600–03, 26604 (West 1999). Furthermore, sheriffs are constitutionally-mandated officials who are supervised directly by the state attorney general. Cal. Const. Art. 5, § 13 (West 1999); *id.* Art. 11, § 1(b). As such, we conclude that the California Supreme Court would extend § 47(a)'s privilege to statements made by Donnelley in his capacity as sheriff, so long as those statements warranted the privilege.

To be privileged, however, Donnelley's statements had to have been made "[i]n the proper discharge of an official duty."

---

9. In finding Donnelley immune, the district court relied in large part on *Kemmerer v. County of Fresno,* 200 Cal.App.3d 1426, 246 Cal.Rptr. 609 (Ct.App.1988). McQuirk contends that *Toney v. California,* 54 Cal.App.3d 779, 126 Cal.Rptr. 869 (Ct.App.1976), presents a more analogous case. It is unneces-sary for us to determine which is the more applicable case, however, because the California Supreme Court cases provide sufficient guidance to render us confident that Donnelley's statements to Smith were "operational" and therefore not immune.

Cal. Civ.Code § 47(a). The California Supreme Court defines such statements as those made in the discharge of an official duty that are related to a policy-making function. For example, in *Saroyan*, the California Supreme Court found statements by the state Superintendent of Banks to a reporter to be privileged because the Superintendent had been responding to an attack in the media by his agency's former attorney regarding a policy position the Superintendent had taken. *See* 371 P.2d at 294, 296. The court concluded that the Superintendent "was acting in the exercise of an executive function when he defended the policy of his department, and his statements were related to the defense of that policy." *Id.* at 296; *see also Sanborn*, 134 Cal.Rptr. 402, 556 P.2d at 767 (concluding that the defendant was not protected by § 47(a) because he was not exercising a policy-making function).[10]

This requirement that the statements at issue be related to the exercise of a policy-making function is closely related to the inquiry into whether an official was acting at a planning, as opposed to an operational, level under § 820.2. That is, actions found to be operational for purposes of § 820.2 cannot constitute statements made in the exercise of a policy-making function

for purposes of § 47(a). In *Sanborn*, the California Supreme Court employed the result of its analysis under § 820.2 to determine whether statements by a city clerk to the news media were made in the exercise of a policy-making function. *See* 134 Cal.Rptr. 402, 556 P.2d at 767–69. As the court of appeal later recognized:

> In *Sanborn*, the California Supreme Court discussed when an official is engaged in exercising his policy making functions by reference to cases construing immunity for discretionary acts under Government Code section 820.2. To be engaged in exercise of his policy-making function the official must reach a basic policy decision, as distinct from an operational decision, after balancing the risks and advantages.

*Neary v. Regents of the Univ. of Cal.*, 185 Cal.App.3d 1136, 230 Cal.Rptr. 281, 285 (Ct.App.1986) (citation omitted).

Because we concluded that Donnelley was not immune from liability under § 820.2 because his actions were operational judgments, we also conclude that he was not acting in a policy-making role. Therefore, his statements were not privileged pursuant to § 47(a), and we cannot affirm the district court's grant of summary judgment.[11]

---

**10.** In *Kilgore v. Younger*, 30 Cal.3d 770, 180 Cal.Rptr. 657, 640 P.2d 793 (Cal.1982), the California Supreme Court broadly stated that the state attorney general's release of a report regarding organized crime at a press conference was privileged under § 47(a) because the release "[had] been made within the proper scope of the Attorney General's authority." *Id.* at 800. Therefore, one could argue that Donnelley's statements were privileged so long as they were made within the scope of his employment as sheriff. We find, however, that *Kilgore* should not be read so broadly. In declining to find the attorney general's privilege abrogated because the report allegedly contained confidential information and therefore was illegal, the court noted that it knew of no case in which a court had denied a high-level official immunity "for publications made in the course of his policy making functions." *Id.* at 799. Furthermore, the attorney general in *Kilgore* was clearly serving a policy-making role when he released the report. Therefore, we read the *Kilgore* court's

broad statements in light of the facts of that case and prior precedent limiting § 47(a)'s reach to decisions made in the exercise of policy-making authority.

**11.** Section 47(b) of the California Civil Code also provides absolute immunity to "[a] privileged publication or broadcast ... made ... (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to [certain provisions of California law.]" Cal. Civ.Code § 47(b) (West 1999). Because defendants did not plead § 47(b) as an affirmative defense or argue it in their brief on appeal, we do not consider it here. We do note, however, that the California Court of Appeal recently held that § 47(b) immunized a former employer from liability arising from statements made to a police department located in California that was conduct-

## C. Glenn County's Liability

The district court granted summary judgment to Glenn County on the basis of § 815.2(b) of the California Government Code, which immunizes a public entity from liability resulting from the actions of an employee who is immune from liability. *See* Cal. Gov't Code § 815.2(b) (West 1999). Because we conclude that Donnelley is not immune from liability, Glenn County cannot be immune from liability pursuant to § 815.2(b). We therefore reverse the district court's award of summary judgment to Glenn County, as well.

## IV.

We conclude that summary judgment was inappropriate as to McQuirk's claims for defamation, interference with business expectancy, outrage, and intentional infliction of emotional distress because the release McQuirk signed is unenforceable under California law and the California immunity and privilege statutes at issue do not apply. Accordingly, the district court's award of summary judgment to Donnelley and Glenn County is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED.

ing a background check of a potential employee. *See Bardin v. Lockheed Aeronautical Sys. Co.,* 70 Cal.App.4th 494, 82 Cal.Rptr.2d 726, 727 (Ct.App.1999).

Donnelley did raise § 47(c), which provides only qualified immunity, as an affirmative defense, and as a ground for summary judgment. *See* Cal. Civ.Code § 47(c) (West 1999) (limiting privilege to "a communication, without malice"), and cases cited in footnote 6, *supra.* The district court, however, did not reach this ground and the parties have not briefed it on appeal. We therefore decline to reach it.